64          HAPGOOD *et al. v.* CORNWELL *et al.*     [Sept. T.,

Syllabus.

## CHARLES H. HAPGOOD *et al.*

*v.*

## CORNELIUS CORNWELL *et al.*

1. PARTNERSHIP—*when one partner sells his entire interest to his co-partner—purchaser may use the property to pay his individual debts.* When one partner sells his entire interest in the firm to his co-partner, the purchasing partner may appropriate the property to the payment of his individual debts, discharged of any claim or equity of the partnership creditors.

2. Nor will it invalidate the transaction, that such purchase was made with the express intention of turning over the property to the creditor of the purchasing partner, in payment of an individual debt.

3. The partners are the owners of the property, free from any lien of their creditors, which can only attach through the partners, and they have a legal right, either by purchase or otherwise, to surrender partnership property in payment of the demand of an individual creditor.

4. FORMER DECISION. These principles are fully recognized in the case of *Ladd* v. *Griswold*, 4 Gilm. 36.

5. PARTNERSHIP—*effect of agreement by purchasing partner that he will pay the firm debts.* And in such case, a promise made by the purchasing partner that he will pay the firm debts, creates only a personal obligation, and not a lien on the partnership effects, which may still be used by him in payment of his individual debts, and when so applied, the individual creditor taking them without notice of any such promise, stands in the position of a purchaser for a valuable consideration, and holds the property, discharged of all lien on the part of the firm creditors.

APPEAL from the Superior Court of Chicago; the Hon. JOHN A. JAMESON, Judge, presiding.

The opinion states the case.

Mr. GEORGE PAYSON, for the appellants.

Messrs. JONES & GARDNER, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

Amory Bigelow, Gilbert F. Bigelow, and David Burr, were partners in business in Chicago. Hapgood, the appellant, as trustee for Amory Bigelow's wife, had loaned to him a considerable sum of money, which had come to her from her grandfather. Fearing that the money was in peril, he urged Bigelow to secure it, and suggested to him to buy out his partners and turn over to him the stock. Bigelow did this, whereupon the appellees, who were creditors of the firm, and had obtained a judgment, brought a bill in chancery against Hapgood and the members of the firm, and the court decreed the payment of their judgment by Hapgood. From this decree he appealed.

The first question in this case is, was Hapgood practicing a fraud or a wrong upon the creditors of the firm, by suggesting that Amory Bigelow should buy the interest of his partners and secure the debt to him with the firm assets. It would undoubtedly have been a wrong, if the law recognized the firm creditors as having a superior equity to that of individual creditors, for payment from the partnership assets. But it does not. It recognizes the members of the partnership as having a superior lien on the partnership property for the payment of the firm debts and allows the creditors to avail themselves of this lien, to the exclusion of individual creditors, where it has not been surrendered by the partners. But it is the equitable lien of the partners that is worked out for the benefit of the creditors, and not a lien inhering in the creditors themselves. Thus, if all the members of a firm agree to

9—48TH ILL.

the appropriation of firm property in payment of an individual debt, due from one of the members, the creditor would take the property discharged of any claim or equity of the partnership creditors, and this, because the members of the firm have expressly parted with their lien, and the creditors have none except through the partners. The same result follows from a sale to one partner by the others. The purchasing partner may use the goods in payment of the partnership or of his individual debts, as he may prefer, and it cannot invalidate the transaction that the purchase is made with the express intention of turning over the goods to the creditor of the purchasing partner. If that can be done directly with the consent of all the partners, it can certainly be done through the indirect medium of a sale to one of them. It also necessarily follows, if the law holds such a transaction legal, and acknowledges no inherent claim to priority on the part of firm creditors, that an individual creditor is guilty of neither wrong nor fraud in requesting his debtor to procure the consent of his co-partners, either by purchase or otherwise, to a surrender of partnership property in payment of the individual debt. These principles were fully recognized by this court in *Ladd* v. *Griswold*, 4 Gilm. 36, and are the settled law. The partners are the owners of the goods, free from any lien on the part of their creditors, and if they choose to let one member use them in payment of his individual debt, they have a legal right to do so, and the individual creditor has a legal right to receive payment in that mode.

It is, however, urged, in behalf of appellees, that in the case at bar, Amory Bigelow, when he purchased from his partners, agreed with them to pay the partnership debts, and that they thereby retained their lien on the partnership effects for the payment of partnership debts. The proof is, that Bigelow, when he purchased, refused to assume the debts, but promised to do the best he could with the assets, and did, in fact, settle, by compounding, with a part of the firm creditors. What

would have been the effect of this promise of Bigelow, if Hapgood had been cognizant of it, we do not find it necessary to decide. In *Rankin* v *Jones*, 2 Jones' Eq. Rep. (N.C.) 169, it is held, that a promise by the purchasing partner to pay the firm debts, creates only a personal obligation, and not a lien, and does not prevent such partner from using the goods in payment of his individual debts. See also *Ex parte Ruffin*, 6 Vesey jr., 119. In *Wildes* v. *Chapman*, 4 Edw. C. R. 669, cited by counsel for appellees, the property was assigned by one partner to the other, expressly in trust to pay the partnership debts, and it was held this trust could be enforced by the partnership creditors, as it clearly could, but certainly only against persons taking the property with notice of the trust.

In the case at bar, Hapgood did not merely take the goods in satisfaction of the debt due to him, but he gave his notes for over ten thousand dollars, which were negotiated by Amory Bigelow, and both he and Bigelow testify he had no notice of any undertaking on the part of Bigelow, when he bought from his partners, to pay the debts, if such was the understanding. We see, then, no ground on which Hapgood can be required to surrender these goods to the creditors of the firm, or to account for their proceeds. He stands in the position of a purchaser for a valuable consideration, and without notice of any facts which would raise a superior equity on the part of the appellees. So far as this record discloses, he dealt with Amory Bigelow simply as the purchaser from his co-partners, without any agreement to apply the goods in payment of the firm debts. So far as he knew, Bigelow had become the sole owner of the goods, unencumbered by any trust, and Hapgood had the right to buy the goods from him, or take them in payment of a debt.

It is true, the case has at first sight a bad complexion, from the fact that Amory Bigelow, in turning out these goods to Hapgood, was paying a debt to the trustee of his own wife; but this should not prevent us from dispassionately weighing

the actual facts, independently of this relationship. The fact that Bigelow's wife might be benefited, did not impair his right to pay or secure the debt due to her trustee. It is not pretended the debt was not honestly due, and when the entire transaction is sifted, we only find that Amory Bigelow bought the interest of his partners in the partnership assets, and then appropriated them to the payment of his individual debt. This he had the right to do, and the fact that he bought the goods with this intent, and that Hapgood was cognizant of it, did not render the transaction illegal, or preserve the lien of the retiring partners upon the partnership effects, for the payment of partnership debts.

*Decree reversed.*