## William S. Goembel *et al.*

### *v.*

## Samuel J. Arnett *et al.*

*Filed at Ottawa May 14, 1881—Rehearing denied September Term, 1881.*

1. Sale—*when title passes, as between parties.* Where the vendor of a stock of merchandise puts the purchaser into possession of the same, and then works a month thereafter with the purchaser under what is assumed to be a part of a previous contract, and the vendor allows the purchaser to go on selling the goods, this will be evidence that the contract of sale was completed.

2. Partnership—*sale by one partner to another—promise to pay debts by purchaser creates no lien.* The promise of one partner to the other, upon a purchase of the entire stock of goods, etc., of the firm, to pay the

partnership debts, will not create any lien on the goods sold. It creates only a personal obligation on the part of the purchaser, and will not of itself prevent the latter from subsequently selling the goods for the payment of his individual debt.

3. CREDITOR'S BILL—*to set aside sale as fraudulent.* A bill to set aside a sale of a stock of goods on the ground of a fraudulent preference in the sale, can not be maintained where no judgment at law has been obtained by the complainant.

4. FRAUDULENT CONVEYANCE—*preference to one creditor.* An insolvent debtor has the right to prefer one creditor to others, by making him a sale of all his stock of goods in payment of the debt, or in part payment.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of Henry county; the Hon. JOHN J. GLENN, Judge, presiding.

William S. Goembel and Jacob Goembel filed their bill in chancery in the office of the clerk of the circuit court of Henry county, against Samuel J. Arnett, Jacob Arnett and Wesley C. Graham, alleging therein, in substance, that in September, 1875, William S. Goembel, Samuel J. Arnett and John Rapp formed an equal partnership, for the purpose of merchandising in Geneseo; that such firm did business until November, 1876, when Rapp retired from the firm; that thereafter Arnett and Goembel continued the business, and having assumed the debts of the old firm, they paid or substituted their own liability for all of them, except $700 due Jacob Goembel, and $300 due another person; that they continued the business until July, 1878, when differences having intervened, it was agreed between them that Arnett should have the entire stock in trade, all the accounts, etc., and in consideration thereof that he should pay all the debts of the firm, including the debts still unpaid of the firm of Arnett, Goembel & Rapp, pay Goembel $2000, employ Goembel to work for him for a month in settling accounts, and that he should secure the payment of the purchase money and indemnify Goembel, by proper instruments in writing, to be signed by Jacob Arnett as surety; that Goembel worked a

month, as agreed, and during that time frequently urged Arnett to perfect the agreement by executing the writings, but he postponed the matter from day to day, at one time pretending he was negotiating the sale of an interest in the firm to Wesley C. Graham, who would bring in money enough to pay the $2000, and at other times suggesting the absence of Jacob Arnett from town, as reason for delay.

It is further alleged, that at this time the firm was possessed of sufficient assets to pay its debts, having on hand about $10,000 worth of goods, besides outstanding notes and accounts; that the firm owed several notes, on which Jacob Goembel and Jacob Arnett, the fathers of its members, were joint sureties, namely: one of $1000, to David Suther; one of $1000, to John W. McClelland; one of $600, to First National Bank of Geneseo; one of $500, to Patrick O'Day; also a note to Carson, Pirie, Scott & Co., on which Jacob Arnett was sole surety, amounting to $800, and one of $400 to same firm, on which Jacob Goembel was sole surety; and that the firm also owed Jacob Goembel $2700, including the $700 of the old firm of Rapp, Goembel & Arnett.

And it is further alleged, that Samuel and Jacob Arnett entered into a combination to defraud the complainants, and, although Jacob Arnett well knew Samuel Arnett had assumed to pay the debts of the firm, on the 4th of September, 1878, he received a bill of sale from Samuel Arnett of all the partnership stock and assets, for which the only consideration was that Jacob Arnett was surety as aforesaid, and was also surety for Samuel Arnett on divers private debts, and Samuel Arnett owed him some amount unknown to the complainants; that this arrangement being made, Samuel Arnett, on September 6, 1878, informed William S. Goembel that he could pay him nothing and could do nothing toward securing him from the debts of the firm; that Samuel Arnett is, personally, insolvent; that Jacob Arnett coöperated with him for the purpose of obtaining a fraudulent preference, in order

to obtain all the assets and leave Jacob Goembel to pay half the debts for which they were joint sureties, and mainly to defraud the creditors of the firm, especially Jacob Goembel; that since the sale, Jacob Arnett and Jacob Goembel have each paid one-half of the debts for which they were joint sureties, but Jacob Arnett refuses to give Jacob Goembel any benefit of the assets of the firm received by him; that Samuel Arnett remained in the apparent possession of the store; that the sale to him by William S. Goembel was incomplete, because of his failure to furnish the stipulated security; that the sale to Jacob Goembel was a fraud, and he has acquired no rights as against William S. Goembel; and that, to further the fraud, there has been some transfer of goods to defendant Wesley C. Graham, but without consideration.

The prayer is for production of books and papers, appointment of a receiver, and an accounting of firm indebtedness; that the assets of the firm may be applied to the payment of all the firm debts, and if any surplus shall remain, it may be applied to the payment of the $2000 to William S. Goembel.

Samuel and Jacob Arnett filed their joint and several answers to the bill, admitting the formation of the partnership by Arnett, Goembel & Rapp, but denying that the partners furnished equal portions of the stock, and they allege that Samuel Arnett furnished more than either of the other parties.  They admit that firm was dissolved and the firm of Arnett & Goembel formed; that the latter assumed the liabilities of the old firm; that the new firm continued to do business until July 8, 1878, when William S. Goembel retired, and sold all his interest to Samuel Arnett for $2000, and that Samuel Arnett assumed all the liabilities of the firm. They deny that Samuel Arnett agreed to give Jacob Arnett as surety, either for $2000 or for indemnity to Goembel against the partnership debts; and they allege that the sale

was unconditional, and completed by the delivery of the stock, and that thereafter Samuel Arnett remained sole owner of the goods. They deny that Jacob Arnett had any knowledge of the terms of the sale to Samuel, until he heard the complainants' bill read, and allege that within a week after the sale he knew of the fact that a sale had been made and of the delivery of the goods, and that Samuel was in possession. They deny that Jacob ever heard that the sale was conditional, and allege that, in fact, he believes it to have been absolute and complete. They allege that on the 4th of September, 1878, Samuel Arnett sold to Jacob Arnett all the property he had in his store, including that purchased of William S. Goembel, for $8272; that the sale did not include notes and accounts; that such sum was more than the value of the property sold; that it was paid by the release of about $1200 due from Samuel to Jacob Arnett before the formation of the firm, a part was sums loaned by Jacob to Samuel after the formation of the firm, and the residue was sums which Jacob assumed to pay, on which he was sole surety for Samuel, and sums that he might have to pay by reason of being joint surety with others for Samuel; that at that time he had loaned to or was joint surety for Samuel to the amount of $9000, of which he has paid over $5700, including $1644.50 paid by him as his half on paper on which he was joint surety with Jacob Goembel; that the sale to Jacob was made in good faith; that at the time of the sale Jacob was informed by Samuel that the amount due creditors of the firm was small, and the notes and accounts which Samuel reserved would be sufficient to pay it all; that Jacob desired to purchase these notes for his own fuller indemnity, but Samuel refused to sell them, and reserved them to pay the firm indebtedness; that Jacob did not think that Samuel owed William S. Goembel, or that the firm owed Jacob Goembel anything, except what might be due him for being surety for the firm debts; that Jacob did

not purchase in order to procure a fraudulent preference, and did not know that any creditors of the firm would suffer by the purchase; that he did not suspect, nor have reason to suspect, the assumption of the firm debts by Samuel, nor that he had not fully paid the purchase price, until the filing of the bill.

The answer further alleges, that Jacob is informed and believes that all that Samuel owed him for, or for which he was surety, went to the benefit of the firm of Rapp, Goembel & Arnett, or that of Arnett & Goembel; that he has not conveyed any of the property so purchased to Wesley C. Graham, but is still owner of it, and has not put any of his property out of his hands; that Samuel Arnett has applied all he received of Jacob Arnett, and all that Jacob Arnett was security for, except $1200, to the benefit of the two firms; that he did not agree to give William S. Goembel any security, but some three weeks after the sale said Goembel asked for such security, when Samuel told him he would see about it, but did not ask Jacob to become surety, and they deny that Samuel remained in the apparent possession of the store, and they deny all combination, etc.

Wesley C. Graham answered, disclaiming any interest in the subject of litigation.

The cause was heard on bill, answers and evidence, and the court found the equity for the defendants, and decreed that the bill be dismissed. From that decree an appeal was prosecuted by the complainants to the Appellate Court for the Second District, and on hearing that court decreed that the decree of the circuit court be affirmed. This appeal is from that decree.

Mr. GEO. W. SHAW, for the appellants:

The sale was not complete. Notwithstanding the delivery of possession, there remained something to be done to make the contract binding,—the giving of security for the payment

of $2000, and to indemnify against partnership debts. 1 Lindley on Part. 677.

The utmost fairness and good faith is required where one partner is seeking to get rid of another, or to buy him out. Ibid. 595.

As between Samuel Arnett and Sidney Goembel, the latter had the right to resume possession of his interest in the partnership goods, or to insist, as he now insists, that they be applied in payment of the partnership debts. *Deven* v. *Fowler*, 2 Paige, (N. Y. Ch.) 400 ; *Renfrew* v. *Pierce*, 68 Ill. 125.

Even if it were admitted that Samuel owed Jacob to the extent claimed, the sale is not good against the creditors of the firm.

The indebtedness wás personal. The firm, up to the sale by Sidney to Samuel, owed Jacob Arnett nothing,—on the contrary, he was its debtor to the extent of about $200. The claim that a large amount of the money which was the consideration of the indebtedness from Samuel to Jacob went to the use of the firm, is unsustained, save by the worthless testimony of Samuel. Sidney knew nothing of such application. Even if it had been so applied, it would not have made the claims of Jacob partnership indebtedness. *Watt* v. *Kirby*, 15 Ill. 201 ; *Lill* v. *Egan*, 89 id. 609.

If Jacob Arnett knew the terms of the sale from Sidney to Samuel, or had notice sufficient to put him on inquiry, he could not receive the partnership goods from Samuel in payment of his individual debt. *Rainey* v. *Nance*, 54 Ill. 36.

Independently of the grounds above stated, Jacob Goembel, and the other creditors of the firm, have a right to demand the application of the partnership stock to the payment of their debts.

Mr. CHARLES DUNHAM, for the appellees :

If the bill were true in all its statements of fact, it could not be maintained.

Jacob Goembel is a simple creditor of the firm of Arnett & Goembel. He never had any lien upon the assets of the firm, either in law or equity. What common or joint right have the appellants? The simple creditors of a partnership have no lien on the partnership assets any more than the simple creditors of an individual have upon his property.

A creditor has no right to attack the good faith of a sale by his debtor until he has judgment and execution, and then only for the purpose of enabling him to collect his judgment. What standing, then, has Jacob Goembel in a bill filed for such a purpose as this? There is no claim in the bill that the assets were conveyed to Samuel J. Arnett in trust for the benefit of the creditors of the firm.

It is true that each partner has a lien upon the partnership assets as against the other partner or partners, to the extent and for the purpose of having the assets applied to the partnership purposes. But this is the sole right of the partner, which he may alone work out, and the creditors, in some cases, get the consequent benefit.

I have been unable to find a case or any principle that will allow a simple creditor—one having no judgment—to maintain such a bill as this.

The following authorities seem to me to determine that this bill will not lie in behalf of these appellants: *Stone* v. *Manning*, 2 Scam. 530; *Bigelow* v. *Andress*, 31 Ill. 322; *McConnel* v. *Dickson*, 43 id. 99.

If Samuel J. Arnett bought the goods of Wm. S. Goembel for the very purpose of turning them over to his father in payment of his debts to him, and if he were guilty of ever so great a fraud in order to purchase of Goembel, yet Jacob Goembel would take a good title, even if he knew the object in purchasing was to sell to him, if he did not know of the fraud used to effect the purchase, and even if he did know of the promise of Samuel J. Arnett to pay the firm debts. Story on Partnership, secs. 360, 361; Story's Eq. Jur. sec.

672; *Reeves* v. *Ayres,* 38 Ill. 418; *Ladd* v. *Griswold,* 4 Gilm. 36; *Hopgood* v. *Cornwell,* 48 Ill. 64.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The only point in dispute in regard to the question of the fact of a sale by William S. Goembel to Samuel Arnett, is whether the terms of the contract were to be reduced to writing, and Samuel was to give his father, Jacob, as surety for the payment of the $2000 to Goembel, and that Samuel would pay the firm debts. William S. Goembel asserts that this was the contract, and Samuel Arnett denies it. It is not controverted that Goembel went out of the store, and left Arnett in possession as sole owner, and that Goembel thereafter worked a month for Arnett, under what was assumed to have been the previous contract. This strongly corroborates Arnett. Why was Arnett allowed to go on selling the goods, and why was Goembel working for him as clerk, if the contract was not completed?

We can not say, under all the evidence, that the circuit court erred in finding the title to the goods passed by the contract to Samuel Arnett. That contract did not create or reserve a lien for the creditors, generally, of the firm. The promise of Samuel Arnett to pay the debts of the firm created only a personal obligation, and not a lien, and it did not, of itself, prevent his subsequently selling the stock of goods for the payment of his individual debts. *Hopgood et al.* v. *Cornwell et al.* 48 Ill. 64; *Ladd* v. *Griswold,* 4 Gilm. 25.

It is not and could not with any plausibility be claimed that any express trust in favor of partnership creditors existed in respect of the goods.

Treating the bill as a bill to set aside a sale on the ground of a fraudulent preference, it clearly can not be maintained, for no judgment at law has been obtained by either William S. or Jacob Goembel. *Stone* v. *Manning,* 2 Scam. 530; *Bigelow* v. *Andress,* 31 Ill. 322; *McConnel* v. *Dickson,* 43 id.

99.  On this ground alone, therefore, the decree below should be affirmed.

We may, however, not improperly, add, that we would not feel inclined to disturb the .decree below if the case turned upon the sufficiency of the evidence to establish a fraudulent preference.  The consideration was unquestionably sufficient to sustain the transfer.   We entertain no doubt that Samuel, in good faith, owed Jacob more than the value of the goods transferred.   He had a right to prefer ·him to others, and it was the exercise of this right of preference that was manifestly alluded to in the loose remarks proved by witnesses of the intention to "beat" or "get ahead" of others, and not the doing of any act deemed fraudulent in law.   We think the fair preponderance of the evidence fails to show that Samuel remained in possession of or retained a secret interest in the goods after the sale to Jacob.

No useful purpose will be subserved by discussing the evidence on this point at large, and we therefore forbear further comment.

The decree below is affirmed.

*Decree affirmed.*