DAN PARKER

v.

HENRY C. MERRITT.

*Filed at Ottawa January 31, 1883.*

1. PARTNERSHIP—*right of retiring partner to lien on partnership assets for payment of firm debts.* If one partner, on a dissolution of the firm, sells his interest in the partnership stock of goods to his co-partner, relying alone upon the agreement of the latter to pay the firm indebtedness, the retiring partner will have no equitable lien on the goods for the payment of the partnership liabilities, that can be enforced in equity.

2. But where, on the dissolution of a partnership, an amount of the stock of goods equal to the firm indebtedness is left with one who continues the business, to be converted into money, with which he is to pay the partnership indebtedness, he can not be held a purchaser, so as to subject the goods to the payment of his individual debts as against the equities of the retiring partner, but he is a trustee of such goods for the payment of the firm liabilities, and the trust may be enforced in equity by the retiring partner for the benefit of the partnership creditors, as against subsequent purchasers or execution creditors with notice of the equities of the retiring partner.

3. SAME—*articles of dissolution construed, as whether passing title to goods to partner continuing the business.* On the dissolution of a partnership, the articles of dissolution provided that an invoice of the goods, etc., and a schedule of the firm debts, should be made, and that the surplus of the assets above the indebtedness should be divided, and that one partner should retain a sufficient amount of the goods, etc., from which he agreed to pay such debts within a given time, and as rapidly as such assets could be realized for that purpose. The partner so retaining the goods continued the business, and a creditor of such partner, having notice of the facts, levied his execution upon the goods. It was *held*, that the retiring partner could maintain a bill in equity to enjoin the sale on the execution, and have the proceeds of the goods applied in payment of the firm debts, and that the interest of the retiring partner did not pass to his co-partner by the articles, there being no sale thereof.

4. NOTICE—*what is, and when inferred.* Where a party has notice of facts sufficient to put a prudent man on inquiry, he is chargeable with notice of such facts as might have been ascertained from a prudent investigation. Notice of the character in which a remaining partner holds goods of a firm after dissolution, and retirement of the other partner, may be inferred from the intimate relations existing between such partner continuing the business and his father, they both residing in the same town, and the father being often in his son's store, and familiar with his business.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Henry county; the Hon. JOHN J. GLENN, Judge, presiding.

Messrs. LANPHERE & BROWN, and Mr. CHARLES K. LADD, for the appellant:

Under the agreement between the partners, the creditors of the firm could sue Parker alone for the firm debts without making Merritt a party, and levy on the goods in controversy to satisfy the judgment against Parker alone. *Snell* v. *Ives et al.* 85 Ill. 279; *Eddy* v. *Roberts,* 17 id. 505; *Brown* v. *Strait et al.* 19 id. 88.

The firm being solvent, the partners could divide the assets as they saw fit, and if one retained the assets, and agreed to pay the firm debts, that did not give the other a lien on the assets. Story on Partnership, secs. 329, 358, 359.

Where possession is given to one partner, who is allowed to act as sole trader, he will have all the credit as such, and all persons dealing with him may treat the property as his. *Ex parte Williams,* 11 Ves. 3.

The contract of Parker to pay the firm debts took the place of the lien Merritt had on the firm goods, and Parker took them free from the lien to pay the firm debts. Story on Partnership, sec. 359; *Ex parte Ruffin,* 6 Ves. 119; *Ex parte Williams,* 11 id. 3.

The law does not give to firm creditors any equities over the individual creditors for payment from the partnership assets. *Hapgood et al.* v. *Cornwell et al.* 48 Ill. 64.

To charge a stranger to a trust fund, it must be shown that he had notice of its character, and its misapplication. *Fifth National Bank* v. *Hyde Park,* 101 Ill. 595; *Ladd* v. *Griswold,* 4 Gilm. 25.

Mr. C. C. WILSON, for the appellee:

Whether the creditors of the firm could sue Parker alone, depends upon whether there was an absolute sale of the goods

to him, or whether he was a trustee for the creditors. If these goods were set apart to pay debts of the firm, then Merritt, or any of the creditors interested in having the debts paid, might ask the aid of a court of equity to prevent the misapplication of the trust fund. *Ward* v. *Lews,* 4 Pick. 518; *First Congregational Church* v. *Trustees,* 23 id. 148; *Fitch* v. *Waikman,* 9 Metc. 517.

If Dan Parker had notice of the trust, or even had the means of knowing of the trust, and took the goods in payment of an individual debt of the trustee, then any person having an interest in the goods might follow them in his hands. *Cott* v. *Lossner,* 9 Cow. 320.·

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by Henry C. Merritt, against appellant, to reach certain goods in his possession, and have the proceeds applied in payment of the firm debts of Parker & Merritt.

It appears from the record that Parker & Merritt were engaged in business as partners in a general store, from February 1, 1874, until September 10, 1878, when the firm was dissolved by mutual consent. The controversy in the case mainly grew out of the construction to be placed upon the contract of dissolution executed by the parties at the time the firm was dissolved. The contract provides: "First, a full and complete invoice at cost, and last invoice price of the stock, goods, fixtures and assets of said firm, shall be taken, as soon as the same can reasonably be done without injury to the trade and business of said firm; second, a schedule of the debts and liabilities of said firm shall be made; third, the amount of said firm indebtedness shall be deducted from the amount of said inventory or invoice, and the balance of said invoice and assets shall be divided as follows, viz:" Then follows a detailed statement of the manner in which the assets shall be divided between the partners. Then comes

the fourth clause in the agreement, which declares: "The accounts due said firm, and not disposed of as aforesaid, and the goods to an amount sufficient to meet the liabilities of said firm as aforesaid, shall be retained by said Parker, and in consideration thereof the said Parker agrees to pay the debts of said firm as aforesaid." The last part of the agreement contains the following: "It is also agreed that the schedule indebtedness of said firm, except the amount due the People's Bank, shall be paid within six months of the final decision herein named, and as rapidly as the assets herein set apart for their payment can be realized upon; and the indebtedness owing to the People's Bank shall be paid within one year."

Under the contract an inventory was made, which showed the resources of the firm to be $29,513.49, as follows:

Left in Parker's hands to pay the amount of the
    firm's debts, in goods, - - - - - $16,724.77
Parker drew out to pay note to Merritt, - - 1,500.00
   "   took poor notes and accounts, - - - 1,507.60
In merchandise, - - - - - - - 3,602.57
Merritt drew out in poor notes and accounts, - 1,507.60
In merchandise and fixtures, - - - - 4,670.95

        Total, - - - - - - - - - $29,513.49

After this settlement between the partners, Henry Parker continued the business in his own name, in the same building which had been occupied by the firm. The goods, amounting to $16,724.77, which were left with Parker to pay the debts, were mingled with other goods purchased, and the retail trade carried on until June 16, 1879, when Dan Parker, appellant, levied upon the goods in the store, on an execution in his favor, against Henry Parker, and on the same day, but after the levy, Henry Parker made an assignment, under the statute, to Howlett, for the benefit of creditors.

The question arising on the facts is, whether that portion of the goods which remained unsold, and which had been left in Parker's hands for the payment of the firm debts, is liable to the execution, or has complainant, the retiring partner, (the partnership debts not having been paid,) the superior right to the goods, or the money arising from a sale thereof, to be used by him as a fund to pay the partnership debts. If Merritt, when the firm was dissolved, had sold his interest in the stock of goods to Henry Parker, and relied alone upon his agreement to pay the indebtedness of the firm, we regard it a plain proposition that he would have no equitable lien on the goods for the payment of the partnership liabilities, which could be enforced in a court of equity. But can this transaction be held to be a sale? The contract of dissolution does not read or declare that Merritt has sold his interest in the goods to Parker, nor can a sale be fairly inferred from the language used by the contracting parties. The fourth clause in the contract of dissolution, which is the only one that can be relied upon to establish a sale, only provides that Parker may retain goods and accounts amounting to $16,724.77, and in consideration of retaining that amount of the firm assets he agrees to pay the debts of the firm. The language employed merely places so much property of the firm in the hands of Parker, to be by him used for a specified purpose. He is, indeed, but a trustee, entrusted with property to be used for a certain specified purpose. This view of the transaction is strengthened when the above clause of the contract is read and considered in connection with the last clause of the agreement, which declares that the schedule of indebtedness of the firm shall be paid within six months, *and as rapidly as the assets herein set apart for their payment can be realized upon.* This language repels the presumption of a sale, and when read in connection with the fourth clause of the agreement, which, of course, is the proper manner to arrive at the true meaning of the contracting parties, would seem to

leave no just ground for holding that a sale had been made, but, on the other hand, from the language employed in the contract, it seems evident that the property belonging to the firm, and not divided, was set apart and left in the hands of Parker, to be used in the payment of partnership liabilities.

If we are correct in this view, was the property set apart to pay the firm debts, and found in the possession of Parker, liable to be taken and sold on an execution for his individual indebtedness, or did the retiring partner retain an equitable lien upon it, under which he has the right to insist upon its application to discharge the liabilities of the firm? Suppose, upon a dissolution of the firm, Merritt had merely retired, leaving all the goods in the hands of Parker, who was proceeding with the business as a sole trader, would an execution against Parker on an individual debt become a prior lien as against the lien of Merritt? We think not. The doctrine on this subject is clearly stated in Story on Partnership, sec. 400, in the following words: "In general it may be stated, that the mere fact that the partnership property, after the dissolution of the partnership, remains in the possession of one partner, who afterwards becomes bankrupt, will not be sufficient, of itself, to make him, in the sense of the statute, the reputed owner thereof, for this is certainly in consonance with the rights of all the partners, as all and each of them are equally entitled to the possession and custody thereof. The case must go further, and establish that the other partners have, by their own acts, or contracts, or conduct, conferred upon him the exclusive right, and order, and disposition thereof, beyond the purposes belonging to the partnership." The goods in question were not left in the possession of Parker to be appropriated to his own use, or to be used in payment of his individual debts, but were left with him for a definite and specific purpose,—to be used for the payment of partnership debts,—and hence the case would seem to fall within the rule laid down by Story.

We have, in the argument, been referred to *Ex parte Williams*, 11 Ves. 3. Upon an examination of that case it will be found, that upon the dissolution of the firm the retiring partner made an absolute sale of the partnership goods to the one who afterwards continued the business, and this was the point upon which the case turned. It is there said: "The question then is, whether the contract for dissolution has left these equities attaching upon the possession. If it is competent for partners to say these equities shall no longer exist, inquiry is necessary to ascertain whether, by the bargain for the dissolution, that which was the property of all has become the property of one. In *Ex parte Ruffin* there could be no doubt upon that, a legal instrument being produced, the legal effect of which was such as I have stated. * * Upon the facts of this case * * * there is distinct evidence of an agreement that the joint effects shall be considered separate effects; and that fact calls upon me to declare the conclusion of law that these are separate effects." What has been said in the case cited might be said here,—had Merritt made an absolute sale, his equitable lien doubtless would have been lost. But such was not the case.

*Wilds* v. *Chapman*, 4 Edw. Ch. 669, is a case in point. Property having been assigned by one partner to the other, in trust, to pay the partnership debts, it was held that this trust might be enforced for the benefit of the partnership creditors. This court, in *Hapgood* v. *Cornwell*, 48 Ill. 64, in referring to the case cited, approved the doctrine announced, but add, that the trust could only be enforced against persons taking the property with notice of the trust. It may be true, if the goods in question had been sold by Parker, in the regular course of business, to some person who had no notice whatever of the manner or character in which he held the goods, such person would be entitled to be protected as an innocent purchaser. But does appellant, who levied upon the property with an execution, occupy that position?

It appears from the record that appellant was the father of Henry Parker,—that the two resided in the same town, and a part of the time in the same house. Appellant knew that Merritt and Parker had dissolved. He was often in the store of the son, and was familiar with his business. He knew that his son was embarrassed, and loaned him money from time to time, and while appellant testified that he had no knowledge that his son retained a portion of the goods belonging to the firm, to be used in the payment of debts, still the majority of the court are of opinion, in view of the intimacy and business relations existing between appellant and his son, that he was in possession of sufficient facts to put him upon inquiry, and hence he is chargeable with notice, as it is a well established rule that where a party has notice of facts sufficient to put a prudent person on inquiry, he is chargeable with notice of such facts as would have been ascertained from a prudent investigation. The relations existing between appellant and his son were such that he could, without trouble, had he inquired, learned precisely the manner in which the goods were held, and the information he possessed made it his duty to make inquiry.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*