CHARLES B. PROUTY, ASSIGNEE, ET AL.
v.
EMMA B. HANFORD AND HARRY EATON.

*Writ of Error—Judgment by Confession—Notes—Consideration—Assignment—Preference—Trust—Evidence—Costs.*

1.  If there be a dissolution of a partnership, and the remaining partner takes all the assets, and agrees with the outgoing partner to pay all the debts, the partnership debts have no preference over the individual debts

of the remaining partner in the disposition of the assets which before the dissolution, were the assets of the partnership.

2.   Upon a writ of error brought to reverse a decree of the Circuit Court rendered on an appeal from the County Court upon a petition filed in voluntary assignment proceedings, to declare void the alleged lien of executions issued upon judgments by confession in favor of the defendants, and against said insolvent, as against her property in the hands of her assignee, and to postpone and preclude said defendants from receiving any dividend out of said property until *bona fide* creditors should be paid, this court holds that the entering up of said judgments by confession, the levying of the executions on said property, and the making of the voluntary assignment by the insolvent were all part and parcel of one transaction by which she divested herself and intended to divest herself of all dominion over her property; that defendants should be paid *pro rata* with the other creditors, the amounts due them, and that no costs be recovered by either party from the other, but each to pay their own.

3.   Notes accepted by children after attaining their majority, from their mother, the same covering their shares of their father's estate, in the absence of evidence going to show that they were not given with honest intent, will be considered as being based upon a sufficient consideration.

[Opinion filed October 23, 1889.]

IN ERROR to the Circuit Court of Cook County; the Hon OLIVER H. HORTON, Judge, presiding.

Messrs. WEIGLEY, BULKLEY & GRAY, for Chicago Shot Tower Co., and Charles B. Prouty, assignee.

Mr. JAMES H. FAIRCHILD, for Hibbard, Spencer, Bartlett & Co., Winchester Repeating Arms Co., Union Metallic Cartridge Co. and Hartley & Graham.

Mr. CHARLES S. THORNTON, for Du Pont & Co., Hazard Powder Co. and Chicago Fireworks Co., BAYLEY & WALDO, for S. Westwood & Co.

Partnership property is a fund or estate held for the purpose of the partnership as a separate and distinct entity.   The interest of a partner therein is only a claim against the floating balance or surplus which may remain after the payment of the firm debts.   Trowbridge v. Cross, 7 N. E. Rep. 347; Rosenstiel v. Gray, 112 Ill. 288.

The interests of Mrs. Burgess and her two children in the property in question, were joint, and so far as the property

was concerned they were partners. It is analogous to a limited or special partnership, and the rights of Mrs. Burgess and her two children are similar to the rights of a general and two special partners; that is, the property invested in trade liable for all the debts before either of the partners can obtain a share, and only the general partner liable personally.

As to persons who never had any business transactions with the firm, notice by publication is sufficient; but as to those who have actual dealings with the firm, actual notice, or its equivalent, must be shown in order to release a retiring partner from liability. Meyer et al. v. Krohn et al., 114 Ill. 585.

The distinguishing characteristic of a partnership is the sharing in profits and losses. Wilcox et al. v. Doge et al., 12 Ill. App. 517.

Where a partner buys out his copartners, agreeing to pay the debts of the firm, the partnership property remains bound for firm debts just as before the sale. The lien of the firm creditors attaching must be preferred to the lien of an individual creditor of the remaining partner attaching first. Conroy v. Woods et al., 13 Calif. 626; Phelps v. McNeely, 66 Mo. 554; Calender v. Robinson, 96 Pa. St. 454.

Where an act is done or a statement made by a party which can not be contradicted or contravened without fraud on his part and injury to others whose conduct has been influenced thereby, an estoppel arises. Voge v. Breed et al., 14 Ill. App. 545; International Bank v. Bowen, 80 Ill. 545.

If a wife advance her husband funds, for the purpose of carrying on a general trade, although in the wife's name, the entire capital including increase will be liable for the debts of the husband. Wilson et al. v. Loomis et al., 55 Ill. 352; Robinson v. Brems et al., 90 Ill. 351; Patton v. Yates, 67 Ill. 164; Hockett v. Bailey, 86 Ill. 77; Miller v. Payne, 4 Ill. App. 118.

Where one, having a right or interest by his conduct, influences another to act on the faith of its non-existence or that it will not be asserted, he shall not be allowed to afterward maintain it to the prejudice of those so acting : McGovern v. Knox, 21 O. St. 547; Roy v. McPherson, 11 Neb. 197; Anderson v. Armsted, 69 Ill. 454.

Definition of "Insolvency": When a concern has not property enough to pay its debts.    McArthur v. Chase, 13 Gratt. 694.

An indebtedness created for the benefit of a trust estate is a charge on the same and may be collected therefrom.    Moore v. Lambkin Tr., 63 Ga. 748; Wylly v. Collins, 9 Ga. 233; Dyett v. N. A. Coal Co., 20 Wend. 571; S. C. 7 Paige, 9.

Debts contracted by a trustee upon the faith of the trust estate, are a charge upon such estate.    Noyes v. Blakeman, 6 N. Y. (2 Seld.); Firemen's Ins. Co. v. Bays et al., 4 Barb. 407; Frazer v. Brownlow, 3 Ired. Eq. 237; Cater v. Everleigh, 4 Desaus. 19; James v. Mayrant, 4 Desaus. 589; Ex parte Richardson, 3 Madd. 157; Montgomery v. Everleigh et al., 1 McCord, 154, 207; Willis v. Sharpe, 21 N. E. Rep. 705.

In the last case mentioned it appeared that the goods had been purchased by one who had rented the estate and were for his own individual use and not for the benefit of the trust estate.    He had, prior to that time, been active manager of said estate.    No notice was given to the creditor from whom he purchased that he was buying them for his own individual use.    A credit was given on the faith of the trust estate, and, the purchaser being insolvent, the estate was held liable.

An exact duplicate of this exists in the case at bar.    All of the trade debts of the insolvent were created on the faith of the trust estate.

Beneficiaries can take nothing until all trade debts are paid in full.    Ex parte Garland, 10 Ves. Jr. 110; Thompson v. Andrews, 1 Myl. & K. 116; Ferry v. Laible, 31 N. J. Eq. 576.

A mother is under no legal obligation to support her child, so long as the father is living, or the child has an estate of its own or is able to support itself.    Mowbry v. Mowbry, 64 Ill. 383; Pray v. Gorham, 31 Me. 240; Commonwealth v. Murray, 4 Binn. 487; 1 Blackstone Comm., 453; Passgr. Ry. Co. v. Stuttler, 54 Pa. St. 375; 1 Parsons on Contracts, *308.

A father died intestate, leaving an estate to his widow and his two minor children.    Held, that the mother will be allowed out of the portion of the estate belonging to the children

Prouty v. Hanford.

for their maintenance, and this for time past as well as time to come.   Wilkes v. Rogers, 6 Johns. 566; Hayward v. Cuthbert, 4 Desaus. 445; Osborn v. Van Horn et al., 2 Fla. 260.

And where real and personal property was left to a widow and her two minor children in certain proportions, the widow was not held liable for the payment of rent of the children's portion of the real estate, she having supported them, the point of the decision being that it was joint property used for the benefit of the joint owners and neither party could recover from the other.   Hatch v. Hatch, 13 At. Rep. 791.

Nor is a step-father bound to support the children of his wife by a former husband.   Attridge v. Billings, 57 Ill. 489; Meyer v. Temme, 72 Ill. 554.

And courts will even make appropriations out of the child's estate in some instances where the father is living and has means with which to support the child.   Jervoise v. Silk, Cooper's Ch. 52.

And always where he has not the means.   Newport v. Cook, 2 Ashm. 332; Ex parte Green, 1 Jac. & W. 253; Carter v. Rolland, 11 Humph. 339.

Even a father, standing in the same position or relation to his two children as Mrs. Burgess did in this case, would not be held liable to account for profits on their estate used by him in maintaining, supporting and educating them, much less a mother.   Fuller v. Fuller, 2 So. Rep. 430.

The guardian of an infant ward living in his family, can charge for board and clothing, though the ward be a near relative and though another member of the family offered to board her for nothing.   Moyer v. Fletcher, 56 Mich. 508.

Where the same person is both executor and guardian, he can not be held liable as guardian, until his accounts as executor show a transfer to his account as guardian.   Conkey v. Dickinson, 13 Metc. 51; Alston et al. v. Mumford et al., 1 Brock. (U. S.) 266, and note on page 278 of said report; Burton v. Tunnel, 4 Harr. 424.

He can not be held liable in both capacities.   Wrenn et al. v. Grayden, 1 How. (Miss.) 365; Forteaux v. LePage, 6 Ia. 123.

An executor who is also guardian should first settle his account as executor and then transfer the balance to the guardianship account. Schouler's Dom. Rel., 373; Conkey v. Dickinson, 13 Metc. 51.

Mrs. Burgess never having filed her bond or obtained her commission as guardian from the Probate Court, according to the statute, never became, in fact, the guardian of her children, but held the property from and after her husband's death and until the date of the failure, as executrix. Secs. 5, 8 and 9, Ch. 64, title, Guardian and Ward, Rev. S. Ill; Wadsworth v. Conell, 104 Ill. 369.

If any creditor of an insolvent debtor, contemplating an assignment, obtain a preference by or through the connivance or assistance of such debtor, the preference will be void as being within the voluntary assignment law prohibiting preferences. P. C. Hanford Oil Co. et al. v. First. Nat. Bk. of Chicago, 21 N. E. Rep. 483; Preston v. Spaulding, 120 Ill. 208; White v. Cotzhausen, 9 S. C. Rep. 309.

Affirmative relief can not be granted defendant on an answer. Ballance v. Underhill, 3 Scam. 452; Rowan v. Bowles et al., 21 Ill. 17; Hanna v. Ratekin, 43 Ill. 462.

Mr. MATTHEW P. BRADY, for defendants in error.

The case In re Johnson (Shearman v. Robinson), 15 Law Reporter, Chancery Division, page 548, is in its facts almost identical with this case on the point now under consideration. It appeared from the evidence that an executor carried on the business of the testator under the terms of the will in his own name. In carrying on one branch of the business he received £764 16s. 1d. more profits than he accounted for to the beneficiary under the will, who was an infant son of testator, and in carrying on another branch of the business he received from it and other sources £1,668 3s. 1d. more than he accounted for. Various creditors who had supplied goods to the executor while carrying on the business, sought to have their claims paid out of the assets of the business, on the ground that they had a lien on the assets which gave them priority over the claim of the beneficiary under the

will. It was held that the creditors were not entitled to
a lien on the assets of the business, nor to priority over the
claim of the beneficiary for the amount for which the exec-
utor was in default to them, because the executor, being in
default to the estate, was not entitled to indemnity, and the
creditors stood in his place. The grounds of the decision are
stated succinctly in the syllabus thus:

"Where a trader has by his will directed his executor or
trustee to carry on his trade and to employ a specific portion
of the trust estate for the purpose, the rule is, that though
the executor or trustee is personally liable for debts incurred
by him in carrying on the trade pursuant to the will, he has
the right to resort for his indemnity to the specific assets so
directed to be employed, but no further. And, consequently
the creditors of the trade are entitled to stand in the place of
the executor and trustee, and to claim the benefit of that
right so as to obtain payment of their debts. But the rule
does not apply where the executor or trustee is in default to
the specific trust estate devoted to the trade. In such a case,
the defaulting executor or trustee not being himself entitled
to an indemnity except upon terms of making good his
default, the creditors are in no better position, and are, there-
fore, not entitled to have their debts paid out of the specific
assets unless the default is made good."

GARY, P. J. In 1870 Charles A. Eaton died; at the time
of his death he was a partner in the mercantile firm of Eaton
& Abbey. By his will he left it to the discretion of his
widow, Emma E., since re-married, and now Burgess, to con-
tinue the assets of his estate in the business. Very soon after
his death she bought out the partner Abbey, mainly with the
proceeds of insurance on the life of her husband, and there-
after conducted the business in her own name as E. E. Eaton.

By the will of her husband, the shares in his estate of her
two children, the defendants in error, Emma B. Hanford
and Harry Eaton, then both minors, were something less than
$6,000 each. Both children lived with, and were supported
and educated by their mother.

In April, 1885, the daughter being about to marry and the son nearly of age, they all met at the office of Messrs. Grant & Brady, attorneys, and the mother and children agreed upon the terms of making her notes for $6,000 to each of the children, in full of all their respective claims.

The note to the daughter was then executed; that to the son was deferred to the following December, when he became of age. Both were judgment notes. These notes were left with plaintiff in error, Prouty, who was then, and continued thereafter to be, so long as the business continued, the business manager of Mrs. Burgess. April 21, 1886, the husband of the daughter applied to Prouty and received a statement of the condition of Mrs. Burgess affairs. Not liking that condition, he told his wife to take her note to Grant & Brady, and do as they advised, and that his judgment was, that judgment should be entered upon the notes. April 22, 1886, Mrs. Burgess, Prouty, Mrs. Hanford and the son, all met at the office of Grant & Brady; judgments were entered upon the notes, executions issued and levied upon all the property of Mrs. Burgess. The next day Mrs. Burgess made a general assignment to Prouty, and by agreement a few days after, the property levied upon by the sheriff was delivered to the assignee, preserving liens. The plaintiffs in error now claim:

First: That the property employed in said business under the name and style of E. E. Eaton, being trust property, in part at least, the rights of trade creditors to be paid out of the proceeds of said property so employed in said business, are superior to the rights of the beneficiaries of said trust.

Second: That the promissory notes given by the insolvent, Emma E. Burgess, to Emma B. Hanford and Harry Eaton were without consideration and therefore void as to creditors.

Third: That the entering up of said judgments by confession, the levying of the executions on said property, and the making of the voluntary assignment by the said insolvent, were all part and parcel of one transaction by which she divested herself and intended to divest herself of all dominion over her property.

As to the first point, it has not been deemed necessary to

attempt to ferret out from this record what portion of the indebtedness of Mrs. Burgess which existed at the time of the assignment, existed at the date when the notes were given.

If the theory of the plaintiffs in error were correct, it could only apply to that class of indebtedness.

But the theory is not correct. By the settlement between Mrs. Burgess and her children all the assets of the business became her own in law and equity, and subject to her disposition.

The case of Ladd v. Griswold, 4 Gilm. 25, followed under very provoking circumstances in Hapgood v. Cornwell, 48 Ill. 64, and approved in Goembel v. Arnett, 100 Ill. 34, establishes the law of his State, that if there be a dissolution of partnership, and the remaining partner takes all the assets and agrees with the outgoing partner to pay all the debts, the partnership debts have no preference over the individual debts of the remaining partner in the disposition of the assets which were, before the dissolution, the assets of the partnership. If, as to a formal acknowledged partnership, this be correct doctrine, it applies with greater force to this case, where the interests of the children, whatever its character, was silent and secret, and they were never held out to the world as having any interest. When that settlement was made the parties were all capable, under the law of this State, to make such contracts with reference to the business then in hand as they could agree upon.

The second point is not well taken. The defendants in error took their mother's notes in full of their claims upon her. If that was with honest intentions, which will be presumed unless there is something shown to the contrary, the claims thereby adjusted and liquidated were good and sufficient consideration for the notes, creating debts of fixed amounts against her.

To impeach, as for fraud against other creditors, a note given by the remaining partners to an outgoing partner for his interest in a firm not able to pay its debts, there must be proof of a fraudulent design. Blow v. Gage, 44 Ill. 208. The principle is applicable here.

The third point is sustained by the evidence. On the whole evidence it is apparent that the mother and children left all their interests in their pecuniary relations with each other, jointly and severally, with and to the discretion of Grant & Brady. They were intrusted by all with the authority to devise any plan that recommended itself to their judgment.

At that time the doctrine of Preston v. Spaulding, 120 Ill. 208, had not been announced. It was supposed by the legal profession generally, that a judgment by confession and levy under an execution issued upon it would take precedence of an assignment for the benefit of creditors following immediately, and that no connection between them would have the effect to make the judgment void as an unlawful preference. The judgment of the Circuit Court directing the payment in full of the executions in favor of the defendants in error will therefore be reversed and the cause remanded to the Circuit Court, with directions to order that the defendants in error be paid *pro rata* with the other creditors, the amounts due upon their respective notes, without costs, made by entering judgment, etc. And that no costs be recovered by either party from the other at any stage of this litigation, but each pay all their own.

*Reversed and remanded.*

MORAN, J., does not concur in so much of the opinion as holds that the judgments were an unlawful preference.