Julia A. Robinson

*v.*

William F. Roos *et al.*

*Filed at Ottawa October 31, 1891.*

1. Partnership—*sale of assets to one partner—of his becoming trustee—trust fund for payment of debts.* Where, on a sale of the partnership assets by the firm to one of the members of the firm, who agrees to pay the partnership debts, a large sum of money of the firm assets withdrawn is placed in his hands, to be used by him in the payment of the amount due from the firm to the estate of his deceased son, he will become a trustee of the money so placed in his hands as a trust fund, and will have no right to appropriate it to any purpose other than that in respect of which he received it.

2. Same—*lien of outgoing partner for payment of firm debts.* Where one partner sells to another all his interest in the partnership estate and assets, he loses his lien to have the assets applied to the payment of partnership debts.

3. Same — *trust fund for the payment of debts—rights of creditors.* Where property is assigned by one partner to another expressly in trust to pay the partnership debts, the trust may be enforced by the partnership creditors; and if the partner so taking in trust applies the trust fund or property in the purchase of land in his wife's name, a court of equity will pursue the fund, and subject the property so acquired to the debts of the firm.

4. Where surviving partners admit that they owe the estate of a deceased partner, but fail to account with the estate as required by the

statute, and all the survivors but one sell their interest in the firm assets to that one, and place in his hands a sum of money to pay the indebtedness due the estate of the deceased partner, and the partner so receiving the money perverts the same to his own use by investing it in his wife's name, the representatives of the deceased partner will have two remedies : either to follow the money into the property in which it was invested, or to call upon the surviving partners for a settlement and payment of the sum due the estate.

5. SAME—*surviving partners continuing business.* Where the surviving partners, after the death of one partner, continue the business, and from the profits credit his estate with a definite sum of money, the survivors by such act will be concluded from afterward questioning their liability to the estate of the deceased partner.

6. SAME—*misappropriation of firm trust funds by one partner to the injury of the others—right of subrogation.* Where one partner receives from the firm money with which to discharge a firm liability, whereby he becomes a trustee, if he, in violation of the trust, uses such money in the purchase of property for his own use, and the other partners are compelled to pay the firm debt, the partner so receiving the money to pay the debt will be regarded, in equity, as the principal debtor, and the partners so paying as sureties will be subrogated to the securities of the creditor, and may, in equity, subject the property purchased with the trust fund to the payment of the debt, for their use and reimbursement.

7. SUBROGATION—*rights of surety.* Where a surety pays off a debt of his principal, he will, under the equitable doctrine of subrogation, be entitled to stand in the place of the creditor, and to use all the means for the purpose of enforcing collection which might be resorted to by the creditor.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Mr. S. M. MILLARD, for the appellant :

Where one partner sells out to another co-partner all his interest in the co-partnership estate and assets, he loses his lien to have the assets applied to the payment of firm debts. Bates on Partnership, sec. 550 ; *Williamson* v. *Adams,* 16 Ill. App. 565 ; *Hapgood* v. *Cornwell,* 48 Ill. 65 ; *Morrison* v. *Kurtz,* 15 id. 193 ; *Derby* v. *Gage,* 38 id. 27 ; *Jones* v. *Bliss,* 45 id.

143; *Parker* v. *Merritt*, 105 id. 293; *Pierce* v. *McClellan*, 93 id. 246.

When the deceased partner, at the time of his death, had no assets, his estate is not entitled to subsequent profits. *Simpson* v. *Chapman*, 4 DeG., M. & G. 154; 2 Lindley on Partnership, 532; *Wedderburn* v. *Wedderburn*, 2 Keen, 722; 4 M. & C. 41; *Vise* v. *Foster*, 8 Ch. 309.

The lien of a co-partner only extends to property of the firm, and not to profits made after dissolution. Lindley on Partnership, 353.

Money held in trust, and put into bank with funds of trustee, the law presumes the owner draws on the common fund from his own moneys first, so that if there remains in the bank ample funds to cover the trust money, the presumption is the trust money is in the bank intact and the owner's money was the first drawn out. Lewin on Trusts and Trustees, 895; *In re Hallett's Estate*, 13 Ch. D. 696.

The mere fact that a trustee has trust money in his hands when he makes a purchase, is not sufficient to attach the trust on lands bought by him. Lewin on Trusts, 897.

The principle of subrogation does not apply to transactions between partners. Dixon on Subrogation, 149; *Bailey* v. *Brownfield*, 20 Pa. 41; Sheldon on Subrogation, sec. 171; *Fessler* v. *Hickernell*, 82 Pa. 150.

One co-partner can not claim a lien on the separate estate of his co-partner after dissolution. Sheldon on Subrogation, sec. 171; *In re Smith*, 16 N. B. Ry. 113.

Subrogation applies only where a special security, as, a mortgage or other distinct security, is passed, and which, on payment of the debt, returns to the principal debtor. Dixon on Subrogation, 47, 48.

By the Roman law, subrogation would have no effect if there were other persons than the common debtors who were bound to the creditors except by special stipulation. Dixon on Subrogation, 20-42.

At common law the surety has his action of assumpsit, and is not subrogated, as of right, to the action of the creditor. Dixon on Subrogation, 46.

Only personal representatives of a deceased partner can require a survivor to account. Lindley on Partnership, 611; Story on Partnership, sec. 347.

Suit to subject the land of an intestate decedent to the payment of a judgment, the administrator is a necessary party. *McDowell* v. *Cochran*, 11 Ill. 31.

Messrs. SEARS & ARND, and Mr. JESSE HOLDOM, for the appellees:

As to the right of appellees to be subrogated to the rights and remedies of the personal representatives of C. Y. Robinson against C. H. Robinson, see *Railroad Co.* v. *Dow*, 120 U. S. 301; *Insurance Co.* v. *Middleport*, 124 id. 534; 1 Story's Eq. Jur. secs. 499-502; *McMillan* v. *Jones*, 105 Ill. 194; *Simpson* v. *Gardiner*, 97 id. 237; *Rice* v. *Rice*, 108 id. 199; *Marsh* v. *Pike*, 10 Paige, 595; *Cottrell's Appeal*, 23 Pa. St. 294; *Lochenmeyer* v. *Fogarty*, 112 Ill. 572; *Keokuk* v. *Love*, 31 Iowa, 118; *Hayes* v. *Ward*, 4 Johns. Ch. 123; *Rhame* v. *Lewis*, 13 Rich. Eq. 269; *McNeill* v. *Morrow*, Rich. Eq. 172.

As to the nature of resulting trusts, see 1 Perry on Trusts, chap. 5, sec. 124; Pomeroy's Eq. Jur. sec. 155.

Where a person obtains the legal title to property, not only by fraud, or violation of confidence or of fiduciary relations, but in any other unconscientious manner, equity will impress a constructive trust upon the property. Perry on Trusts, sec. 166; 1 Spence's Eq. Jur. 511, 512; *Collins* v. *Collins*, 6 La. 368; *Thompson* v. *Thompson*, 16 Wis. 94; *Ryan* v. *Dix*, 34 N. Y. 307; *Robbins* v. *Robbins*, 89 id. 251; *Wood* v. *Rabe*, 96 id. 414; *Beatty* v. *Brummett*, 94 Ind. 79; *Cox* v. *Ratcliffe*, 105 id. 378; *Deisher* v. *Stein*, 34 Kan. 41; *Randall* v. *Constans*, 33 Minn. 336; *Beach* v. *Dyer*, 93 Ill. 295; Pomeroy's Eq. Jur. secs. 1030, 1031.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by appellees, William F. Roos and Horace W. Henshaw, against Julia A. Robinson, impleaded with Charles H. Robinson, for the purpose of subjecting certain property held by Julia A. Robinson, which she acquired from her husband, Charles H. Robinson, known as the "Maywood property," to the payment of a sum of money which appellees were decreed by the probate court of Cook county to pay to the administrator of the estate of C. Y. Robinson, deceased.

The facts out of which this litigation arose are, briefly, as follows: In June, 1882, C. H. Robinson, and his son, C. Y. Robinson, and the appellees William F. Roos and Horace W. Henshaw, entered into a co-partnership for the purpose of manufacturing butterine in Chicago. After the business was commenced, and in December, 1883, C. Y. Robinson died. No accounting was had upon his death, but the business was continued by the surviving members of the firm. In May, 1884, William E. Roos was admitted into the firm with the surviving partners. The business was continued until the 24th day of June, 1885, when the firm was dissolved, and William E. and William F. Roos and Horace E. Henshaw sold all their interest in the firm to C. H. Robinson, who assumed and agreed to pay all debts of the firm. Among the debts, as shown by the books of the firm, was one due the estate of C. Y. Robinson, of $6631. This amount was drawn from the firm assets and placed in the hands of C. H. Robinson, to be held for the benefit of the estate of his son, C. Y. Robinson, deceased. Upon receipt of the money, C. H. Robinson and the widow of C. Y. Robinson executed and delivered the following paper:

"We, the undersigned, hereby, in consideration of the sum of $6631 paid us this day by William F. Roos, William E. Roos and Horace W. Henshaw, which amount is their proportion,

of the indebtedness of the firm of Charles H. Robinson & Co. to Charles Y. Robinson, being six-tenths of the entire amount so due, do hereby release and discharge the said William F. Roos, William E. Roos and Horace W. Henshaw from all claim and demands of said Charles Y. Robinson, now deceased, against said firm of Charles H. Robinson & Co., or by his estate.

"Witness our hands and seals, this 24th day of June, A. D. 1885.                         C. H. ROBINSON,   [Seal.]
                          MAGGIE ROBINSON. [Seal.]"

In regard to the dissolution of the firm and payment of the money over to Robinson, H. W. Henshaw testified, in substance, as follows: "On the dissolution, in June, 1884, we divided the profits and losses and placed the proportionate share of C. Y. Robinson to his credit. It was twenty per cent of the profits and losses. It was something over $8000. That amount, or a part of it, remained due from the surviving partners until the following June, 1885. The firm was then dissolved by mutual consent. William E. Roos had been admitted a co-partner. In June, 1885, there remained due $6630, of the $8000. At the dissolution, in 1885, the Roos' and myself went out of the firm. The $6630 was paid to C. H. Robinson, to be held in trust for the estate of C. Y. Robinson. Other witnesses testified to the same effect, and the master in chancery to whom the cause was referred to take and report the evidence, found that $6500 was drawn from the firm assets June 15, 1885, and deposited to the credit of C. H. Robinson. It also appears that C. H. Robinson deposited this, with other money, in the National Bank of Illinois. It also appears that on June 30, 1885, Robinson purchased the property in question, and paid for the same by check drawn on his individual account in the National Bank of Illinois; that in the summer of 1885, cottages were erected on the property, and paid for out of the same fund. Robinson made some payments to the widow of his son on account of the money he had received for

that purpose, but becoming embarrassed in his business affairs, payments ceased.

In October, 1886, letters of administration on the estate of C. Y. Robinson were issued by the probate court of Cook county, and a citation was issued against the surviving partners of the firm, requiring them to account for all assets of the firm belonging to the estate. C. H. Robinson was not served, but the other partners were served with process, and upon a hearing in the probate court they were decreed, on April 13, 1887, to pay to the administrator the sum of $4300. Appellees paid the amount, and filed this bill to reach the property purchased and paid for from the funds appropriated by the firm and paid over to C. H. Robinson, to be paid in satisfaction of the claim held by the estate of C. Y. Robinson against the firm.

It is said in the argument, that when one partner sells to another all his interest in the co-partnership estate and assets, he loses his lien to have the assets applied to the payment of firm debts. Conceding the statement to contain a correct proposition of law, as has been held by this court in *Hapgood* v. *Cornwell*, 48 Ill. 64, and subsequent cases, still we do not think the doctrine announced has any application to the facts of this case. Here, in addition to a sale of the partnership assets, and an agreement on the part of C. H. Robinson to pay the co-partnership debts, a fund of $6631 was placed in his hands, to be used by him in the payment of the amount due from the firm to his son's estate. There is in the record abundance of evidence to establish the agreement. Besides, the paper dated June 24, 1885, signed by C. H. and Maggie Robinson, in which they recite that they have that day received from appellees $6631, is a substantial corroboration of the other evidence on that subject. Under this assignment C. H. Robinson became a trustee. He held the money placed in his hands as trust funds, and he had no right to appropriate it to any purpose other than that provided for in the agreement, under which the money was placed in his hands.

In *Wilds* v. *Chapman,* 4 Edw. Ch. 669, where property was assigned by one partner to another expressly in trust to pay the partnership debts, it was held that the trust could be enforced by the partnership creditors. The same principle was announced in *Parker* v. *Merritt,* 105 Ill. 293. *Renfrow* v. *Pearce,* 68 Ill. 126, is a case in point. It is there said: "By the terms upon which the co-partnership between Pearce and Renfrow was dissolved, Renfrow was constituted trustee of the goods of the firm, for the purpose of converting them into money by sale at retail, and paying the debts of the firm. This being so, the act of Renfrow in exchanging the goods for lands, and taking a conveyance thereof to his wife, was a fraudulent perversion of the trust property, because the possession of them had been committed to him to convert them into money by sale at retail at a designated place, and apply the proceeds as above stated. Equity will therefore follow the property thus acquired, and subject it to the debts of the firm."

The same principle upon which the case cited was decided applies here. A specified amount of money was placed in Robinson's hands by appellees, which was to be used by him in the payment of a certain co-partnership debt. The money was diverted from the purpose for which it was appropriated, and used for the purchase of lots and the erection of buildings thereon, and the title to the property thus purchased was turned over to appellant, the wife of Robinson. As was declared in the case cited, equity will follow the property thus acquired, and subject it to the payment of the debt for which it was placed in Robinson's hands.

The legal representatives of the estate of C. Y. Robinson had two remedies: They could follow the money into the property in which it was invested, or they could call on the surviving partners for settlement, and the payment of whatever sum was due from the firm to the deceased. They chose the latter course, and compelled appellees, by decree of the probate court, to pay the amount. C. H. Robinson, having secured

the money, may be regarded as the principal debtor, while appellees, the other partners, were his sureties. They having been compelled to discharge the debt, under a well-known rule in equity they were entitled to be substituted in the place of the creditors as to all securities held for the payment of the debt, and to have the same benefit that the creditors would have therein. When a surety pays off a debt of the principal, under the equitable doctrine of subrogation he is entitled to stand in the place of the creditor, and use all the means for the purpose of enforcing collection which might be resorted to by the creditors. (*Rice* v. *Rice*, 108 Ill. 204; *Memphis Railroad Co.* v. *Dow*, 120 U. S. 301; *Ætna Life Ins. Co.* v. *Town of Middleport*, 124 id. 534.) The appellant acquired title to the property with notice that it had been purchased with funds placed in her husband's hands for the purpose of paying the liability of this firm to the estate of C. Y. Robinson, and of course she occupies no better position as respects the property than he occupied.

At the time C. Y. Robinson died there was little, if anything, then due him from the firm. The amount afterwards credited to him on the books of the company was really made in the business after his death. This fact, however, we do not regard as important. When the surviving members of the firm, of their own accord, saw proper to continue the business after the death of C. Y. Robinson, and from the profits thus made credit him or his estate with a definite sum of money as belonging to his estate, they are concluded by their acts. The amount credited was treated by the surviving partners as a subsisting firm liability, and whether it was made before or after the death of C. Y. Robinson, so far as the rights of the parties to this record are concerned, is immaterial.

In conclusion, we are of opinion there is ample evidence to sustain the decree, and no reason is perceived why the judgment of the Appellate Court should be reversed. It will therefore be affirmed. *Judgment affirmed.*