## John A. Hinsey et al. v. Supreme Lodge Knights of Pythias.
### Gen. No. 13,136.

1. TRUSTS—*remedy upon abuse of, by individual investment.* A trust officer who assumes interests in conflict with the interests of his principal may be required to surrender all such interests and to account for all loss resulting to his principal by virtue of his illegal conduct.

Hinsey v. Supreme Lodge K. of P.

2. TRUSTS—*scope of doctrine of impressive.* The doctrine of impressive trusts is sufficiently broad in its scope to permit the following of money, wrongfully appropriated by one standing in a fiduciary relation to another, into whatever property it may have been invested.

3. TRUSTS—*alternative relief appropriate upon abuse of, by individual investments.* Where a trustee has employed trust funds in individual investments, the *cestui que trust* may either follow the funds into the *corpus* of the investment or recover the money misappropriated and have the property purchased with that money subjected to the payment of the amount due.

4. RATIFICATION—*when amendment of bill of complaint does not affect.* An amendment does not affect a ratification where the theory of the original action has not been departed from and where the amendments at most only inject into the cause a new method to be adopted in obtaining the ultimate relief sought by the original bill.

5. RATIFICATION—*what not subject to.* Transactions in themselves illegal are not subject to ratification.

6. REDEMPTION—*when order of sale without right of, appropriate.* A sale of real estate ordered to satisfy a money decree is properly awarded without according to the defendants any right of redemption where such defendants were wrongdoers and had no title in such real estate, either legal or equitable.

Bill for accounting, etc. Error to the Circuit Court of Cook county; the Hon. OSCAR E. HEARD, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed January 13, 1908.

By an order of severance duly entered of· record, plaintiffs in error, John A. Hinsey, Erastus Sipperly, Charlotte Sipperly and Arrolyn M. Brooks, were allowed to prosecute this writ of error alone, the remaining plaintiffs in error being by that order barred, pursuant to statute, from hereafter attacking the verities of the decree of the Circuit Court, with the exception of Elmer L. Parker, whose appeal from the Circuit Court decree is now pending in this court.

**Statement by the Court.** The parties will be here designated as in the court below, complainant and defendants.

The complainant is a corporation in virtue of a charter granted to it by the Federal Congress June 29, 1894, as a fraternal and benevolent association. Its

charter forbade its engaging in any business for gain. It was granted power to make a constitution and amend the same at its pleasure, and in pursuance of its charter, about April, 1895, it established and, to the time of filing the bill herein, maintained an insurance department for insuring the lives of such of its members as desired to be insured. This department was known as the "Endowment Rank," governed by a constitution and by-laws adopted by the supreme lodge of complainant. The government of such Endowment Rank was vested in a Board of Control, composed of the Supreme Chancellor and the Endowment Commissioner of complainant, each *ex officio,* and three members of the Supreme Lodge, members of the Endowment Rank, elected by the Supreme Lodge. From the members of this Board of Control there should be elected a President, Secretary and Medical Examiner in Chief, all of whom must be members of the Endowment Rank.

The Board of Control was authorized to designate a solvent bank as depositary of the funds of the Endowment Rank, and was given full control, subject to the supervision of the Supreme Lodge; and to hold and disburse the funds of the Endowment Rank. Its meetings to be held at dates to be fixed by the President in the months of January, April, July and October of each year. This Board was also required to make quarterly reports "giving the financial condition and such information as they may deem necessary, four copies of said report to be sent to each section and a copy to each officer and member of the Supreme Lodge; that the secretary shall be required to give bonds, and shall also be required to deposit with the designated depositary of the Rank all moneys received by him on account of the Endowment Rank." It was also made the duty of the Secretary to issue and attest all warrants drawn on the depositary for the disbursements of the fund of the Endowment Rank, such warrants to be signed by the President of the Board of Control.

Section 5, Article 3 of the Constitution is as follows:

"The Board shall have power to direct the investment in readily convertible securities of such parts of the Endowment Fund as they may deem wise and proper when the amount in such fund will justify."

The Board was required to keep a full and complete record of its acts and proceedings, and to prepare and submit a report thereof to the Supreme Lodge at each regular session, and at other times to the Supreme Chancellor, if that officer so required.

The President, under the direction of the Board of Control, had general supervision of the Endowment Rank, and the Secretary was required to receive all moneys due the Rank and deposit the same daily in the designated bank, and notify the President of the amount of gross receipts and deposits, and to keep books showing all entries of receipts and disbursements, so that from time to time the general status of the Endowment Rank may clearly appear, both as to its membership and financial condition.

The defendant, John A. Hinsey, was President of the Board of Control, and Henry B. Stolte was its Secretary, from April, 1888, until January 27, 1901.

On August 20, 1901, complainant filed its bill against the defendants, charging inter alia that on the fourth of April, 1895, John A. Hinsey, Henry B. Stolte, Albert I. Bouffleur, Charles H. Kessler, Wallace D. Millard, Elmer L. Parker and Erastus Sipperly conspired together for the purpose of defrauding the complainant and the Board of Control of large sums of money, to wit, $20,000; that pursuant to said conspiracy Hinsey and Stolte, on April 4, 1895, and while the Board of Control was not in session, and without its authority, purchased with $7,152 of the funds of the Endowment Rank, from the Illinois Trust & Savings Bank, a certificate of sale of Thomas Taylor, Master in Chancery of the Circuit Court of Cook county, made to it on the twenty-seventh of December, 1894, of lots 1 to 8, both inclusive, in block 1, lot 20 in block

1, all of block 2, lot 25 in block 3, lot 27 in block 4, in Walter S. Dray's Third Addition to Oak Park; that on said date the Illinois Trust & Savings Bank assigned said master's certificate to the Board of Control; that subsequent thereto, and prior to July 26, 1895, said Hinsey and Stolte pretended to expend money belonging to the Endowment Rank in purchasing certain tax sale certificates, involving general taxes for the years 1893 and 1894, and in payment of special assessments on said property and other disbursements claimed, amounting to $848; and on said last mentioned date Hinsey and Stolte fraudulently pretended to said Board of Control that the sums aforesaid pretended to be expended constituted a loan secured by said master's certificate, and that the amount of such loan was $8,000; that the defendants, Bouffleur, Kessler, Millard, Parker and Erastus Sipperly, were privy to the said fraudulent pretenses; that the Board of Control, being deceived by said fraudulent pretenses, ratified and approved such pretended loan of $8,000, while in fact no such loan had been made; that the Board of Control had no power to loan the funds of the Endowment Rank on such security, and that by reason of the frauds practiced on the Board of Control, the loan is void; that further in pursuance of such fraud, on November 11, 1895, Hinsey, as President of the Board of Control, and Stolte, as Secretary thereof, pretended to assign to Wallace D. Millard said master's certificate of sale and the interest of the Board of Control therein, for a pretended valuable consideration, to all of which the parties last named were privy; that in fact no consideration passed from defendant Millard to the Board of Control; that no valid assignment of the certificate could be made except by an instrument signed by all the members of the Board of Control, or by their written authority; that on March 28, 1896, the period of redemption having expired, said master executed his deed as such master, conveying to the defendant, Wal-

lace D. Millard, all of the property described in the master's certificate; that said deed was duly recorded; and that all such actions were without the knowledge or consent of the Board of Control, and that at no time did complainant or the Board of Control receive any consideration for the making of the master's deed, and that it was fraudulently procured, and that the defendants, Hinsey and Stolte, Bouffleur, Kessler, Millard and Parker, were privy to all such fraudulent acts.

That on the first of April, 1896, the defendant Wallace D. Millard, by a quit-claim deed, conveyed to the defendant Elmer L. Parker all his interest in the property, which was conveyed by Master Taylor's deed, for the nominal consideration of one dollar, which said deed was duly recorded in the recorder's office of Cook county; that neither complainant nor the Board of Control had knowledge of or consented to the execution of such quit-claim deed, or received any consideration therefor; that on April 1, 1896, said Parker executed his trust deed to Charles T. Allyn, trustee, Henry B. Stolte, successor in trust, to secure two notes for $4,500 each, payable five years after date, with six per cent. interest, together with coupon notes evidencing the several installments of interest; that by said trust deed he conveyed all of the property described in Master Taylor's deed, with the exception of lot 20 in block 1, lot 25, block 3, and lot 27 in block 4; charging that Hinsey and Stolte, on April 1, 1896, fraudulently pretended to take and accept said notes and trust deeds in lieu of the pretended loan of $8,000 on the certificate purchased of the Illinois Trust & Savings Bank, and to make an additional loan thereon of a thousand dollars, making a total of $9,000; that defendants Bouffleur, Kessler, Millard, Parker and Sipperly had knowledge of such fraudulent pretenses, and that the sum of $1,000 was not in fact loaned to Parker, but was taken from the funds of the Endowment Rank and appropriated by defendants Hinsey and Stolte to their own use and that of their con-

federates; that the complainant and the Board of Control not knowing the facts, being misinformed and deceived by Hinsey and Stolte, on the twenty-fourth of April, 1896, ratified the pretended loan of $9,000, and that in fact the Board of Control had no power or authority to loan said funds on such security, claiming that the last mentioned pretended loan, by reason of the fraud so practiced on said Board of Control, is void, as well as for the lack of power to make the loan.

The bill further charges that on May 4, 1896, another portion of the property conveyed by Master Taylor to Millard, and by Millard to Parker, viz.: lot 20 in block 1, lot 25 in block 2, lot 25 in block 3, and lot 27 in block 4, in Dray's Third Addition aforesaid, together with the adjoining tract of land described as block 13 of Charles F. Swigart's Subdivision of lot 5 and the west thirty-three feet of lot 6 in the subdivision of the north half of the southeast quarter, and the east half of the southwest quarter of section 18, was platted and subdivided by said Parker under the name of Sipperly's Addition to Oak Park, and that plat on July 3, 1896, was recorded in the Cook county recorder's office; and averring that said lot 13 of Swigart's Subdivision was bought of Swigart on April 11, 1896, by the defendants Hinsey, Stolte, Bouffleur, Kessler, Millard, Parker and Sipperly, and title taken in the name of Parker, and that all of the money used in purchasing said last described land was taken from the funds of said Endowment Bank by the said Hinsey and Stolte without the knowledge or consent of complainant or the Board of Control, and that Bouffleur, Kessler, Millard, Parker and Sipperly had knowledge of such unlawful taking; that on May 25, 1896, Parker made his two promissory notes of $5,000 each, due five and six years after date with interest at six per cent., payable half yearly to his own order and endorsed by him in blank, and that to secure said notes Parker executed a trust deed to Charles T. Allyn as

trustee and said Stolte as successor in trust, and conveyed thereby lots 19 to 24 in block 2, lots 1 to 24 in block 3, and lots 1 to 20 in block 4 in said Sipperly's Subdivision, and that said Hinsey and Stolte, without the knowledge or consent of complainant or the Board of Control, fraudulently pretended to make a loan to said Parker for the sum of $10,000 from the fund of said Endowment Rank, and to take the two said promissory notes secured by said trust deed, when in truth and fact the said $10,000 was not loaned to said Parker or to anybody else, but was appropriated and converted by said Hinsey and Stolte to their own use and to the use of said Bouffleur, Kessler, Millard, Parker and Sipperly, and that said $10,000 was used by them in the purchase of said lot 13 in Swigart's Subdivision, and that the last named defendant had knowledge of the conversion of said money of the Endowment Rank; that on July 29, 1896, said Hinsey and Stolte, by pretending to said Board of Control that said $10,000 had been loaned Parker on the notes secured by the trust deed, and concealing from the Board of Control the facts above alleged, and thereby deceiving the said Board of Control, procured said Board to approve of said pretended loan; that on June 11, 1896, Parker conveyed to Stolte by warranty deed all of block 1 and lots 1 to 18 in block 2, of said Sipperly's Subdivision, without the knowledge of said Board of Control, and that neither the complainant nor the Board of Control received any consideration for said conveyance.

The bill further charges that the purchase of the master's certificate and of lot 13 in Swigart's Subdivision by the officers of the Board of Control, and the making of the pretended loan on said certificate and the subsequent making of the two pretended loans of $9,000 and $10,000 respectively was a part of a scheme, device and conspiracy to defraud complainant and the Board of Control, and the said scheme, device and conspiracy was concocted and practiced upon com-

plainant and the Board of Control by said Hinsey, Stolte, Bouffleur, Kessler, Millard, Parker and Sipperly for the purpose of defrauding complainant and the Board of Control; that the title to said property was placed in the name of said Millard and in the name of said Parker by the last named defendants, for the purpose of concealing the fact that they were interested in said property; that a portion of said property aforementioned was subdivided under the name of "Erastus Sipperly's Subdivision" for the purpose of concealing from complainant and the Board of Control the fact that the property so subdivided consisted in parts of property embraced in the certificate purchased by the officers of said Board of Control, of the Illinois Trust & Savings Bank; that thereby complainant and said Board of Control were in fact deceived by said fraudulent pretenses and led to believe that said pretended loan of $8,000 was in fact a loan made *bona fide* by the officers of said Board of Control in accordance with the laws of said Endowment Rank, and that the said pretended loan of $9,000 was in fact the loan made by the officers of said Board of Control in accordance with the laws of said Endowment Rank, and that said pretended loan of $10,000 was in truth and fact a loan made by the officers of said Board of Control in accordance with the laws of said Endowment Rank and upon other and different property than that covered by said pretended loan of $8,000; and alleging further that on the two Parker notes for $4,500 each there was paid the sum of $1,200 to the Board of Control, and that $7,800 of the principal of said note remained due, together with the coupon interest note falling due April 1, 1901, since which time no payments have been made of either principal or interest; also averring that the two notes of said Parker for $5,000 each, with the last interest note due the twenty-fifth of May, 1901, remained due and unpaid, since which last mentioned date no payments have been made of either principal or interest.

It is also averred that Charles T. Allyn, the first mentioned trustee, has executed releases on lots 1 to 23 and 24 in block 2 of said Dray's Addition, and that the same were executed without the knowledge or consent of complainant or of the Board of Control, and represents that the pretended assignment of the said master's certificate by said Hinsey and Stolte, as President and Secretary of said Board of Control, to Millard, and the deed of Master Taylor to said Millard, and the quit-claim deed of Millard to Parker, and the deed of Swigart to lot 13 in Swigart's Subdivision, and the subsequent deed and conveyance of said Parker, were in fraud of the rights of complainant and the Board of Control, and ought to be set aside, declared null and void, and be delivered up to be cancelled under the direction of the court.

It is further represented that complainant and the Board of Control, under and by virtue of the said master's certificate and the assignment thereof to the said Board of Control by the Illinois Trust & Savings Bank, are entitled to a deed from some master of the court, wherein and whereby there shall be conveyed a fee simple title to all of the lots embraced in said certificate, and that complainant and the Board of Control are also entitled, by reason of the fraudulent use of the fund of said Endowment Rank in the purchase of said lot 13 in Swigart's Subdivision, to a deed of all of the property except insofar as it shall appear that other parties have acquired a good and lawful title to portions thereof without notice of the frauds charged.

After averring that the defendants, other than those charged as parties to the conspiracy alleged, claim some interest in portions of the premises the subject of attack by the bill, and that such claims are subject to the rights of complainant that have accrued since complainant and the Board of Control acquired title thereto, and making all of them parties defendant, complainant prays:

"That the said pretended assignment of said cer-

tificate to said Millard and the said deed of the said Master in Chancery, Thomas Taylor, Jr., to the said Millard and the said quit-claim deed of said Millard to the said Parker, and the said deed of Charles F. Swigart to said Elmer L. Parker, and the said several trust deeds of said Parker, and the said deed of said Parker to said Henry B. Stolte may be set aside and declared null and void as against your orator and the said Board of Control, as a cloud upon the title of your orator and said Board of Control, and may be decreed to be delivered up and canceled, and that some master in chancery of this court may be decreed to make a deed to your orator of all of the property embraced in the said certificate of Master in Chancery Thomas Taylor, Jr., as of March 28, 1896, and of said Lot Thirteen (13) in Swigart's Subdivision as of the 11th day of April, A. D. 1896, except in so far as it shall appear that other parties have acquired good and lawful title to portions of said lands; and that a decree may be entered against all of the defendants who may be adjudged parties to the fraud, deceit and conspiracy practiced upon your orator and said Board of Control in the assignment of said certificate to the said Millard and the procuring of the execution of said deed by Master in Chancery Thomas Taylor, Jr., to said Millard, and of the execution of said deed by said Charles F. Swigart, and the subsequent conveyance by said Millard to said Parker, and the several conveyances by said Parker to the several persons hereinbefore mentioned of portions of said land, for such sum as may be found to be due to your orator by reason of said fraudulent acts of the said defendants; and for such additional sums as this court may find to be due by reason of the conveyances by said Parker and his grantees, to innocent purchasers for value of any part of said lands without the knowledge and consent of your orator or said Board of Control, with interest thereon from the dates of such conveyances, and that your orator may have such other and further relief in the premises as equity may require and to your Honors shall seem meet.''

On March 20, 1903, complainant presented a petition

to the court setting forth that ''Since the filing of the original bill the petitioner has been informed that as to all of the property sought to be recovered by it in said proceeding, which is not included in and covered by said two deeds of trust, has prior to the filing of said original bill passed into the hands of innocent purchasers for value, whose equitable claims thereto are superior to those of your petitioner. That your petitioner has been advised and believes that it is to its best interest that said cause of action should be changed to a suit to foreclose said two deeds of trust and for an accounting, and that its bill should be amended as aforesaid.''

On this petition an order was entered that ''Complainant have leave to amend this cause of action and change the same to a suit for a foreclosure of two certain deeds of trust named in said amended bill, and have an accounting,'' and on the same date an amended bill was filed by the complainant, setting up substantially the same facts as in the original bill and praying ''that an account may be taken in this behalf by or under the direction of this court, and that said Elmer L. Parker and such other of said defendants as the court may determine are liable to your orator by reason of the matters and things alleged in its amended bill may be decreed to pay to your orator whatever sum shall be due it upon the taking of such an account, together with its costs in this proceeding, by a short day to be fixed by the court; that in default of such payment the said mortgaged property may be sold as may be directed by the court, to satisfy the amount due and costs; that in case of such sale and failure to redeem therefrom pursuant to the statute, the defendants and all persons claiming through or under them subsequent to the commencement of this suit may be forever barred and foreclosed of all right and equity of redemption in the said premises,'' and for other relief, etc.

In May, 1904, after considerable testimony had been

introduced, a second amended bill was filed by leave
of court, setting out the facts substantially as in the
former bills, and praying "that an accounting may
be taken in this behalf by or under the direction of
this court of all the moneys that the said John A.
Hinsey and Henry B. Stolte abstracted and withdrew
from the funds of your orator and the said Endow-
ment Rank, as is above set forth, and of the interest
thereon from the time of taking thereof to the time
of such decree, and for the increment and profit arising
therefrom, and for all losses and expenses that your
orator has suffered and been put to in the premises;
that the said Hinsey and personal representatives of
the said Stolte be required to pay to your orator such
sum as may upon such accounting appear to be due
to your orator on account thereof, and that such other
of said defendants, if any, as this honorable court may
determine. are liable to your orator by reason of the
matters and things hereinabove alleged, or some of
them, may be decreed to pay said amount, and that
in default of such payment, by a short day to be fixed
by the court, said mortgaged premises be decreed to
be sold either under said deeds of trust, or otherwise,
as the court may determine, to satisfy said amount
so found to be due, and the costs of this proceeding, and
that in case of such sale and failure to redeem there-
from, pursuant to the statute, defendants and all per-
sons claiming through or under them subsequent to the
commencement of this suit, may be forever barred and
foreclosed of all right and equity of redemption in the
said premises; that after applying the moneys realized
from said sale upon their debt, the said Hinsey and
the personal representatives of the said Stolte, or some
of them, be decreed to pay to your orator such sum as
may remain due upon such accounting," and for other
relief, etc.

The defendants Hinsey, Parker, Sipperly and Brooks
each answered the original bill and the two amend-
ments, in which answers no controlling averments of

fact in either the bill or its amendments were denied. On the contrary, all of the facts in relation to the endorsement of Master Taylor's certificate by the Illinois Trust & Savings Bank, the making of the master's deed to the property described in said master's certificate of sale to Wallace D. Millard, and the subsequent conveyances and dispositions of the property evidenced by the conveyances recited in the bill, are admitted.

The material matters set up in defense consist in a denial of all the fraud and conspiracy charged, and averring the *bona fides* of all transactions, the knowledge of complainant and the Board of Control of all the essential elements entering into the several transactions, that the sums advanced by the Endowment Rank were *bona fide* loans such as under the constitution and by-laws the Endowment Rank had authority and power to make, and that the real estate security given was ample indemnity at conservative values.

The defendant Brooks claims an interest in lots 9, 10 and 11 in block 2 in Dray's Third Addition to Oak Park under an agreement with Wallace D. Millard, dated January 15, 1896, and filed for record July 14, 1899, whereby Millard agreed to convey the three lots for the sum of $1,350, averring that the filing of the bill cast a cloud upon the title, preventing any further acts being done in carrying out its terms, and that the contract was entered into without either knowledge or notice of any rights or equities of complainant.

Defendant Stolte, since deceased, and his wife, on March 22, 1902, conveyed the property known as the Rhodes avenue lot to Charles F. Neal, president in succession to defendant Hinsey, and on the same day Stolte and his wife conveyed to Carlos S. Hardy, the attorney for complainant, eighteen lots in Sipperly's Subdivision. These conveyances were made in the sole interest of complainant, for whom Neal and Hardy held the properties conveyed to them respectively.

Replications to the answers were filed, and the cause was referred to a master to take proofs and report his

conclusions of both law and fact thereon to the court. All of the parties were heard before the master, and the numerous dealings challenged by complainant were thoroughly elucidated by the proofs, and a report rendered by the master to the court, with his conclusions as to the law governing the transactions. To this report objections were filed before the master, which, being by him overruled, were again filed as exceptions before the chancellor, who sustained some of the exceptions of the defendant Sipperly and overruled the remainder, and as to the defendant Parker sustained some of the exceptions and overruled the others. One exception of the defendant Brooks was sustained and the others overruled. On the motion of defendants Parker and Sipperly the cause was re-referred to the master for an additional report on the question of usury raised by the answer of defendant Sipperly. Neither Parker nor Sipperly tendered any additional proof before the Master, whereupon the master filed an additional report, saying: "I find no reason to change any of my findings of fact therein with reference to Sipperly's relations to the matters in controversy, and from the facts found in my said former report I conclude and find that the defense of usury set up in said answer of said Erastus Sipperly and Charlotte Sipperly is not sustained by the evidence." And the master further recommended the entry of a decree in accordance with his findings and recommendations, and that such decree should provide for canceling of Parker's notes, aggregating $19,000, and the surrender of the notes to Parker and the release of the trust deeds securing the same.

Objections filed by Parker and Sipperly to this last report of the master were overruled, and, being refiled as exceptions, were overruled by the court.

There is in evidence a letter from Hinsey to Sipperly, dated October 4, 1901, in which reference was made to the real estate in controversy, which reads in part as follows:

"I am also greatly annoyed about our real estate transactions. You have placed Stolte and myself in a very awkward as well as an expensive position. You sold a number of lots, paid yourself some commission and finally took all the cash payments. You turned over a lot to us on Rhodes Avenue—I do not know how much it is worth, but allowing $1500 for that as I recall it, you still owe us about $700 on that transaction and are making no effort to either pay us or secure us in any way. You then effected a loan of your own of $300, by giving us a mortgage on a lot—as to its value I have no knowledge—the note is past due—there is 1½ year's interest on it that you have not paid, and you have made no effort to aid us with reference to that transaction. What do you propose to do? * * * In addition to the money that you appropriated to your own use you disposed of ten lots, that only belonged to you on condition that you acted your part in the real estate transaction between us— the moment you obtained title you disposed of them. It occurs to me that you owe it to us and to yourself to make some effort at this time to rectify the wrongs of the past. You ought not to abuse the confidence that brother Stolte imposed in you, in the way you have. As to myself, I had no knowledge of you, and acted only on Brother Stolte's recommendation."

The defendant Parker made a declaration of trust, which is as follows:

"Whereas W. D. Millard, of the City of Chicago, has, by a deed bearing date April 1st, 1896, conveyed to me the following described real estate, to-wit: Lots one (1) to eight (8), both inclusive, in Block one (1), and lot twenty (20) in block one (1), all of block two (2), lot twenty-five (25), block three (3), and lot twenty-seven (27) in block four (4), all in Walter S. Dray's Third Addition to Oak Park, being a subdivision of block one (1), two (2), three (3) and four (4) of Shippen's Addition to Oak Park, being a subdivision of block one (1), two (2), three (3) and four (4) of McGrew's Subdivision of lot seven (7) of a Subdivision of Section eighteen (18), Township thirty-nine (39) north, Range thirteen (13) East of the Third Prin-

cipal Meridian, (except west half of south-west quarter of said Section), situated in County of Cook and State of Illinois.

"And whereas, Charles F. Swigart and wife, of the City of Chicago, have also conveyed to me block thirteen (13) in Swigart's Subdivision of lot five (5), and the west thirty-three (33) feet of lot six (6) in the Subdivision of Section eighteen (18), Town, Range, County aforesaid.

"Now, therefore, in consideration of one dollar ($1) to me in hand paid, I do hereby for myself, my heirs, executors and administrators, acknowledge that I hold title thereto in trust only, for the use and benefit of John A. Hinsey, Henry B. Stolte and Erastus Sipperly, * * * and that I have no beneficial interest therein, and I do for myself * * * covenant and agree to and with said John A. Hinsey, Henry B. Stolte and Erastus Sipperly, and each of them, and with their and each of their executors, administrators and assigns, that I or my heirs, executors and administrators, shall and will upon demand convey the said premises by a good and sufficient deed to the said John A. Hinsey, Henry B. Stolte and Erastus Sipperly, and their assigns, as they may direct or require.

"In witness whereof I have hereunto set my hand and seal this 25th day of April, A. D. 1896.

"ELMER L. PARKER,    (SEAL).

"Acknowledged before W. D. Millard, a Notary Public, on the 25th day of April, 1896."

George F. Baker likewise made a declaration of trust as to the Chicago Herald property June 7, 1895, and among other things declared that he held the title and possession in trust only for John A. Hinsey, Henry B. Stolte and Erastus Sipperly, and acknowledged and declared that he had no title or interest therein, but held the same in trust for the benefit of the parties aforesaid.

A final decree as amended by the order of June 16, 1906, was entered June 1, 1906, conforming to the master's report as modified by the sustaining of certain exceptions thereto made by the defendants Sipperly,

Parker and Brooks. The findings of the decree are voluminous and cover every phase of the facts involving the interests of the several parties.

The decree finds that the defendants John A. Hinsey, Erastus Sipperly and Catherine E. Stolte, as administratrix of the estate of Henry B. Stolte, deceased, were indebted to complainant to the amount of $17,401.89, and orders that unless the same, with interest at five per cent., and costs, be paid within ninety days, the real estate acquired in fraud of the rights of complainant, and not previously disposed of to innocent purchasers for value, be sold without the right of redemption, and that for any deficiency a personal decree should be entered against the parties last named; and that the two trust deeds and the notes secured thereby be canceled, satisfied and released and they were delivered to the master for that purpose.

ROBERT R. BALDWIN and BENSON LANDON, for plaintiffs in error.

SCOTT, BANCROFT, LORD & STEPHENS and CARLOS S. HARDY, for defendant in error; FRANK H. SCOTT, of counsel.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

We shall confine our review and discussion in this opinion to the facts and the law only, as they affect the interests of the defendants Hinsey, Sipperly and Brooks, plaintiffs in error here, and the defendant, Elmer L. Parker, appellant in case Gen. No. 13,193, consolidated for hearing with this writ of error.

Counsel for defendant Hinsey prefaces his statement of facts with this observation: "There is but little conflict in the evidence of this case. The facts which we submit are controlling and not controverted."

We are convinced from an examination of the record that the pertinent facts controlling the rights of the parties are not, when divested of the refinements of

distinction indulged in argument, open to serious controversy.

This evidence fully sustains the findings of the decree, which is the foundation upon which the right to maintain it must be predicated, that all the transactions were entered into by Sipperly, Stolte and Hinsey for their own benefit, and that they were jointly interested in the real estate, and that the money was drawn from the funds of the Board of Control and advanced for the purchase of all the real estate in question, for the joint benefit of Hinsey, Sipperly and Stolte, and that such payments were a fraudulent conversion of the funds of the Board of Control.

In the light of the overwhelming proof of the glaring fraud of these persons, the argument of counsel for Hinsey that "Mr. Hinsey * * * objects to a decree which finds that he has been guilty even of a constructive fraud, even though such decree might result in his financial advantage," is hypocritical and disingenuous. On the contrary, so far from Hinsey and his co-conspirators being guilty of a constructive fraud, they are condemned by the record as guilty of intentional and deliberate fraud upon complainant in their dealings with the real estate in question and with the funds of complainant which paid for it.

To support the charges of fraud we find in this record that the moneys of complainant were, in violation of its constitution and by-laws, used in the purchase of the real estate under the delusive representation that they were loans made upon ample real estate security. We have searched this record in vain in an attempt to find where any of the parties to this conspiracy furnished one dollar of money, obtained from any source independent of complainant, for the initial purchase of any parcel of real estate. The transactions here challenged were initiated by Erastus Sipperly negotiating for the purchase from the Illinois Trust & Savings Bank of the master's certificate for the sum of $7,352.25. Hinsey and Stolte, President

and Secretary of the Board of Control, April 4, 1895, drew a check for $8,000 in their official capacity, which money was used in the purchase of the certificate and in payment of taxes accruing during the period of redemption. The master's certificate was assigned by the bank and delivered to the Board of Control. At this time William Garnett, Jr., was the record owner of the equity of redemption, and on October 31, 1895, for the consideration of $900, conveyed such interest to Wallace D. Millard. This purchase was financed by Hinsey and Stolte, in their official capacity, drawing a warrant against the funds of complainant in the First National Bank of Chicago for $1,000, $900 of which was used to pay Garnett. The Board of Control, thereupon, through Hinsey and Stolte, assigned the master's certificate to Millard, who surrendered the certificate to the master on March 28, 1896, and received in return a master's deed conveying the property set forth in the certificate. At this time Hinsey was general claim agent for the Chicago, Milwaukee & St. Paul Railroad Company, and Millard was employed in a subordinate capacity, under Hinsey, at a small salary. He was a friend of Hinsey's, without property or means save only his salary. He was simply used as a conduit through which to pass the title to the land.

On April 1, 1896, Millard quit-claimed to the defendant Elmer L. Parker all of the property described in the master's deed. Parker was a claim agent of the Chicago, Milwaukee & St. Paul Railroad, who worked under the direction and authority of Hinsey, the head of the department. Parker paid no money or other valuable consideration, or any consideration, for the conveyance to him, and Millard made the conveyance at the direction of Hinsey. On April 6, 1896, Parker made a trust deed to secure $9,000 to Charles T. Allyn as trustee and to the defendant Stolte as successor in trust. This trust deed, being ostensibly made to secure payment of the advances made from the funds of complainant for the whole of the property conveyed by

Millard to Parker, conveyed only a portion of such property, leaving the title to a material and valuable portion of it vested in Parker, free of all encumbrance.

The defendant Erastus Sipperly then negotiated with Charles F. Swigart for the purchase of block 13 in Swigart's Subdivision, etc., for the sum of $8,500, Swigart and his wife conveying the property to the defendant Parker by deed dated April 11, 1896. This purchase was paid for with the funds of the complainant, by Hinsey and Stolte officially drawing a warrant for the sum of $10,000 in favor of one F. R. Baldwin, who was a clerk in the employ of Sipperly, of no financial responsibility. Eight thousand, five hundred dollars of this warrant was paid to Swigart for the land and the remainder used in payment of taxes and other charges on the real estate.

In May, 1896, Parker subdivided the land purchased from Swigart, together with the land conveyed to Parker by Millard, and omitted from the trust deed securing the $9,000 to Allyn, trustee, naming it "Erastus Sipperly's Subdivision." This subdivision was divided into four blocks, the lots in the blocks aggregating eighty. Parker, on May 25, 1896, executed a trust deed to Charles T. Allyn, as trustee, and defendant Stolte, successor in trust, to secure the $10,000 of complainant's money used in the purchase of the Swigart property conveying the property in Erastus Sipperly's Subdivision with the exception of thirty lots. The title to these thirty lots remained in Parker unencumbered, not having been included in either of the trust deeds.

These manipulations with the funds of the complainant in these several real estate transactions were confined to Hinsey and Stolte, and were by them concealed from the other members of the Board of Control, and the fact that Hinsey, Stolte and Sipperly were interested in these transactions was studiously and designedly kept from the other members of the Board of Control. In all these transactions Hinsey and Stolte, only, represented the Board of Control.

The Endowment Rank was authorized to loan money only when there were surplus funds on hand, from which loans could be made; yet the record shows that when the $8,000 was withdrawn, the bank account was overdrawn in excess of $42,000; when the $1,000 was withdrawn, the deficit was more than $11,000, and more than $19,000 when the $10,000 was withdrawn from its bank account. All of this money was extracted upon the pretenses of loaning upon the security of the real estate for which the several sums of money were in fact used to pay the whole purchase price.

The finding of the court, in which we unreservedly concur, was that these moneys were drawn from the funds of the Board of Control and advanced for the purchase of the premises in question for the joint account of Sipperly, Hinsey and Stolte, and constituted a fraudulent conversion of the funds of the Board of Control, a diversion which could be neither sanctioned nor ratified by the Endowment Rank; that the property known as the Rhodes avenue lot was acquired by Stolte with the proceeds of real estate acquired with the funds of complainant, and that the same was held by Stolte for the use of himself and Hinsey.

Stolte, since the filing of the bill, seems to have admitted his part in these fraudulent transactions, and on March 2, 1902, conveyed the Rhodes avenue lot to Neal, Hinsey's successor, as president of the Board of Control, for the use and benefit of complainant, which lot Neal subsequently conveyed to complainant.

On October 30, 1895, Millard executed a declaration of trust in which he recited that the conveyance of Garnett to himself was made to and was then held by him in trust only for the use and benefit of Stolte, Hinsey and Sipperly, and that he had no financial interest therein. Parker on April 25, 1896, also executed a declaration of trust, in which he recited: "I do for myself, my heirs, executors and administrators, acknowledge that I hold title thereto in trust only for the use and benefit of John A. Hinsey, Henry B.

Stolte, and Erastus Sipperly. * * * I have no beneficial interest therein.''

Parker, after the execution of the trust deed, conveyed the omitted thirty lots to Stolte, and Stolte conveyed ten of said lots at the direction of Sipperly and held the remaining twenty for himself and Hinsey. Stolte by deed dated March 22, 1902, conveyed all the property standing in his name to Carlos S. Hardy, the attorney of complainant, for its use and benefit. Hardy and his wife in their answer admitted holding the title to the lots so conveyed by Stolte for the use of complainant, disclaimed any interest therein, and consented to the entry of any order in relation thereto which the court might deem for the best interest of complainant. Stolte afterwards conveyed and delivered to Hardy all notes, contracts and securities in his possession relating to the property unlawfully obtained with the funds of complainant.

Stolte, as far as he was able, before his death, made restoration of all the interest he acquired through the unlawful use of complainant's money, to the diversion of which he was a party.

The property known as the Chicago Herald property was by like means conveyed to one George F. Baker, who by a declaration of trust dated the seventh of June, 1895, which was held by Stolte, declared that his title and possession was held in trust for Hinsey, Stolte and Erastus Sipperly.

From the foregoing it is evident that complainant's money paid for thirty lots which, by manipulation, Hinsey, Stolte and Sipperly appropriated to their own use, without a dollar's requitement therefor to complainant. Sipperly acquired ten of the thirty lots, his share agreed upon; and while Hinsey contends that he had no knowledge of these dealings, yet, on October 4, 1900, in a letter recited in the statement preceding this opinion he said: ''In addition to the money that you appropriated to your own use, you disposed of ten lots that only belonged to you on condition that

you acted your part in the real estate transaction between us. The moment you obtained title you disposed of them.''

In the light of the evidence, it is clear that notwithstanding Stolte may have had possession of the several declarations of trust, yet Hinsey was not only party to, but cognizant of, their contents. He told Sipperly that he wanted two of the thirty lots which were situated on the corner of Harrison street; and from the active part he took in these transaction as the President of the Board of Control, he must be held to be cognizant of these dealings. Hinsey is again contradicted by his co-conspirator, Sipperly, who testified that ''The terms of the declaration of trust were discussed between Mr. Hinsey and myself and it was in pursuance of such conversation that the declaration of trust was made. Mr. Hinsey said the declaration of trust should show what each one owned and who owned it. It was stated that each one owned one-third.''

Parker was substituted in place of Millard, on consultation with Hinsey. Hinsey's contention that the declaration of trust in favor of himself was really for the benefit of the Endowment Rank falls of its own weight, in view of the fact that he failed to have any notation or entry thereof made on any of the books of complainant. As said by the master in his report: ''If Hinsey's testimony that he had no personal interest in the matter is true, then it would appear that for the purpose of assisting Sipperly, in whom he had no interest whatever, in a real estate transaction, Hinsey advanced from the funds of the Board of Control in his charge more than the aggregate purchase price of the two tracts of land, that he allowed Sipperly to retain out of the lands thirty lots clear, and assumed no personal responsibility for the repayment of the moneys advanced, and representing a fund held in trust, only took as security notes signed by a dummy, who did not expect to pay the same and was not understood by Hinsey to assume any personal responsibility

in the matter, the sole security being that portion of the property covered by the incumbrances; and, further, that at the time he did this the Board had no idle funds to invest, but obtained the money by overdrawing its account at the bank, on which overdraft it may be assumed the Board was obliged to pay interest.

"No rational explanation is offered to explain why, if Hinsey was not interested, that his friends Millard and Parker executed, as part of the transaction by which they received title, the two declarations of trust * * * setting up Hinsey's interest in the property.

"The only rational explanation of Hinsey's course of conduct in the whole transaction is offered by the testimony of Sipperly that the speculation was entered into for joint account of Sipperly, Hinsey and Stolte."

The conduct of Hinsey cannot be excused. He was an officer of complainant and inhibited by every legal and moral consideration from making a profit out of the trust confided to him—a trust of the most sacred character, involving the interests of widows and orphans, which he jeopardized by these unlawful transactions.

Sipperly's testimony fastens beyond removal the interest and relation of Hinsey to these transactions, which the law stamps with its disapproval and stigmatizes as dishonest. Hinsey, as a trust officer having no right to assume interests in conflict with that of complainant, must, by well-settled principles, surrender all such interests so acquired and be held responsible to make good every dollar which complainant may have lost. Complainant had a right to proceed for alternate relief and to select that method which in its opinion will ultimately result in making it whole.

The doctrine of impressive trusts is sufficiently broad in its scope to permit the following of money, wrongfully appropriated by one standing in a fiduciary relationship to another, into whatever property it may have been invested. Robison v. Roos, 37 Ill. App. 646,

affirmed in 138 Ill. 550; Verble v. Dillow, 218 Ill. 537.

We do not think the doctrine of estoppel is pertinent as applied to the amendments to the bill as originally filed. There is nothing in its averments which warrants the conclusion that any of the unlawful acts of the conspirators were ratified, or any of the offenses committed by any of the parties in interest against complainant condoned.

The theory of the original action has not been departed from in either of the amendments subsequently made, and at the most the amendments inject into the cause a new method to be adopted in obtaining the ultimate relief sought by the original bill. If the alternative method was open to complainant, it had a right to pursue it, and this we think it might have done under its prayer for general relief.

And furthermore, the transactions attacked were in themselves illegal, which complainant had no power to ratify. Best Brewing Co. v. Klassen, 185 Ill. 37; Chicago Hansom Cab Co. v. Yerkes, 141 Ill. 37; Crichfield v. Bermudez Asphalt Paving Co., 174 Ill. 466; National Mahaiwe Bank v. Barry, 125 Mass. 20.

By the original bill complainant sought to follow the funds wrongfully invested in real estate. By the bill as amended it seeks to recover the money misappropriated and to have the property purchased with that money, or its proceeds, subjected to payment of the amount due. This method does no violence to the rights of any of the parties.

The rights of all the parties who were innocent purchasers of any of the real estate involved were properly conserved by the terms of the decree, and none of them are here complaining, with the exception of Brooks; and as to all parties other than the innocent purchasers, the decree ordering a sale without redemption was right, for in law the wrongdoers had no title, legal or equitable, entitling them to redeem. The title which these wrongdoers had acquired was in fraud of the rights of complainant, and obtained by wrongful

appropriation of its funds, and as held in Beach v. Shaw, 57 Ill. 17, a person having a merely naked legal title, with no equitable rights, cannot redeem, and the liability of the conspiring defendants remains to make complainant whole from any loss following the misappropriation of its funds, and therefore, if the property remaining subject to sale under the decree is insufficient to reimburse it, with interest and costs, then the conspiring defendants remain liable to make that deficiency good, and a judgment for such deficiency rendered against them.

We think the method of accounting adopted by the decree fulfills all legal requirements. Credit has been given to the defendants held personally liable for every dollar paid, from whatever source it may have been collected.

The defendant Sipperly, the evidence demonstrates, was a co-conspirator with Hinsey and Stolte, and as such he must be held to the same degree of responsibility to complainant as they. Sipperly had full knowledge of the official position of Hinsey and Stolte in the Board of Control, and is chargeable with knowledge of the diversion of complainant's funds, and that the property, in equity and good conscience, was that of complainant. He has no title recognizable in a court of equity. Lamson v. Beard, 94 Fed. Rep. 30.

As to the defendant Brooks, she made a contract in good faith with Millard for the purchase of lots 9, 10 and 11 in block 2, in Dray's Third Addition to Oak Park. There was due from her, of principal and interest, and for taxes advanced by complainant, at the time of entering decree, $979.92. This the decree ordered her to pay within ninety days, with interest at five per cent., and in default directed that the three lots be sold subject to her right to redeem under the statute, and that the money received from such sale be applied by the master upon her indebtedness. Complainant, in legal intendment owning the land, is entitled to all that is due upon it from any innocent pur-

chaser. This is all the decree exacts from Mrs. Brooks. It is patent no violence is done to her interests, as she is only required to perform according to her contract with Millard.

By inadvertence certain property was omitted from the order of sale in the decree. This was corrected by an order entered of record in the Circuit Court on the twenty-second of March, 1907, and on suggestion of a diminution of the record a certificate of those proceedings has been added and made a part of the record.

The decree of the Circuit Court is without error, and it is affirmed.

*Affirmed.*